**BROTHERHOOD OF RAILROAD TRAIN-MEN v. TEMPLETON et al.**

No. 14034.

United States Court of Appeals
Eighth Circuit.

April 14, 1950.

Rehearing Denied May 9, 1950.

See also D.C., 7 F.R.D. 116.

John Murphy, Kansas City, Mo. (J. Gordon Siddens and Tucker, Murphy, Wilson & Siddens, Kansas City, Mo., on the brief), for appellant.

Thomas P. Downs, Kansas City, Mo. (Frank W. Aylward, James P. Aylward and Terence M. O'Brien, Kansas City, Mo., on the brief), for appellee Harold H. Templeton.

E. C. Hartman, St. Louis, Mo. (John H. Lathrop, Sam D. Parker, Kansas City, Mo., and William J. Milroy, Chicago, Ill., on the brief), for appellees Atchison, T. & S. F. R. Co., and Panhandle & Santa Fe R. Co.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken by the Brotherhood of Railroad Trainmen, a labor union referred to as B. of R. T., to reverse a judgment entered against it in a civil action brought on behalf of the class of workmen on the Atchison, Topeka and Santa Fe and the Panhandle and Santa Fe railroads called messenger-baggagemen. Workmen of that class are employed jointly by the Railway Express Agency, Incorporated, and the railroads and they do not belong to the B of R. T. The judgment determined that cer-

tain awards in favor of the B. of R. T. affecting the railroad employment of the messenger-baggagemen made by the First Division of the National Railroad Adjustment Board were void and that certain agreements thereafter made between the B. of R. T. and the railroads, referred to as "letter agreements", were merely an application and implementation of said awards wrongfully imposed upon the railroads and injunction was awarded to restore the situation as to the railroad employment of the class of messenger-baggagemen which existed prior to the awards.

The pleadings and evidence were voluminous but through extended pre-trial conferences, laborious digesting of the depositions of numerous witnesses and oral arguments and briefs of counsel during and at the conclusion of the evidence, the respective claims and contentions of the parties were clarified and the particulars impressed upon the trial court. The full consideration given by the trial court is most clearly shown by setting out its findings of fact as follows:

"Plaintiff is a citizen, resident and inhabitant of the State of Missouri. The individual members of the class that plaintiff here represents are citizens and inhabitants of various other states. The class which plaintiff here represents consists of approximately Two Hundred and Seventy-five (275) members, employees of the defendants Atchison, Topeka and Santa Fe Railway Company, and Panhandle and Santa Fe Railway Company, having a common interest in the relief here sought and whose several rights and property will be directly affected hereby. Defendant Atchison, Topeka and Santa Fe Railway Company is a corporation, incorporated under the laws of the State of Kansas. Defendant Panhandle and Santa Fe Railway Company is a corporation, incorporated under the laws of the State of Texas. Defendant Brotherhood of Railroad Trainmen is a voluntary, unincorporated association and labor union, having its residence and principal place of business at Cleveland, Ohio. The matter here in controversy between the parties exceeds, exclusive of interest and costs, the sum of Three Thousand Dollars ($3,000.00).

"For many years, beginning sometime prior to 1892 and to September 15, 1945, the defendant Atchison, Topeka and Santa Fe Railway Company, and Panhandle and Sante Fe Railway Company (both said defendants will hereafter be referred to as 'Santa Fe' regardless of their corporate entity and the particular portion of the Santa Fe system they serve), have uniformly by custom and practice, employed in 'joint service' on the Eastern and Western Lines of the Santa Fe, express messengers also in the employ of the Railway Express Agency, Incorporated, or one of its predecessors (hereafter termed 'Express Company'), for the handling of United States mail, baggage, Santa Fe mail, company material, and other items transported and carried by the Santa Fe in baggage cars on certain of its passenger trains. It now employs such express messengers in 'joint service' on that portion of its railroad known as the Coast Lines. (The Eastern and Western Lines of the Santa Fe, informally stated, extend from Chicago, Illinois, to Albuquerque, New Mexico. The Coast Lines extend from Albuquerque, New Mexico, to Los Angeles, California, and along the Pacific Coast.)

"The custom and practice of employing express messengers in such 'joint service' arose perforce of certain written contracts entered into between the Santa Fe and the Express Company. Under said contracts it was agreed that the Express Company could arrange with the Santa Fe for station and train employees of the Santa Fe to act as agents and express messengers of the Express Company to handle express at railroad stations, subject to rules of the Express Company; and, that the Santa Fe could arrange with the Express Company for the agents and express messengers and other employees of the Express Company to act as station or train employees of the Santa Fe, subject to the rules of the Santa Fe and upon such terms as may be agreed upon by the two companies. Said contract specifically provided that all agents and employees of the Express Company while

on the premises or on lines of the Santa Fe should conform to the general rules of the Santa Fe then in force, and in case any messenger or other employee of the Express Company should from any cause be objectionable to the Santa Fe he would be removed or discharged upon the written request of the Santa Fe.

"Under such arrangement, the Express Company has during all the times here in question hired express messengers who have been so engaged in 'joint service' on the Santa Fe. The term 'joint service' or 'joint-serviceman' as hereafter used, means a type of employment whereby one individual serves as an express messenger and handles express for the Express Company, and also serves as a 'train baggageman' and handles baggage, United States mail, railroad mail, and other items of railroad property. All the work so performed by such an individual is done in a baggage car operated by the railroad as part of the consist of passenger trains.

"'Joint service' exists on practically all railroads operating west of the Mississippi River and east of the Pacific Coast.

"At the present time and in recent years, the Brotherhood of Railway & Steamship Clerks, Etc. Union is, and has been, the collective bargaining agent for express messengers. The only existing collective bargaining agreement governing rates of pay, hours and working conditions for express messengers, whether in 'joint service' or otherwise, is between the Clerks' Union and the Express Company. (No such agreement exists on behalf of any such employees with the Santa Fe. The Santa Fe could, of its own volition, terminate 'joint service' on its lines at will.) Under the provisions of the collective bargaining agreement which the Clerks' Union has with the Express Company, the latter is given the right to establish seniority districts for all express messengers in its employ. Express messengers employed by the Express Company work in depots, on trains as express messengers only, and some of them work in 'joint service'. Separate rosters or seniority lists are maintained by the Express Company for each such job classification. When an express messenger is hired by the Express Company and awarded a regular job, his depot seniority begins; when such a messenger enters train service or 'joint service' he acquires what is termed 'road seniority'. Both such seniorities continue to accrue to an express messenger in the employ of the Express Company after he enters train or 'joint service' and such employee can bid back and forth for positions in each such job classification on the several railroads employing 'joint service'. The bargaining agreement the Clerks' Union has with the Express Company provides for the bulletining of vacancies occurring in 'joint service'. When such a vacancy occurs on the Santa Fe, the Express Company bulletins such vacancy and express messengers are invited to bid therefor. Ten (10) days after the date of filing bids, the Express Company posts a notice on the bulletin board, showing who is the successful bidder. The Santa Fe is thereupon notified of the person who is the successful bidder for a given train run, on which 'joint service' is employed, and the successful bidder for such job then reports to the Santa Fe Baggage Car on that particular run and thereupon enters 'joint service' on the Santa Fe. The Santa Fe at all times had knowledge of the bargaining agreement between the Express Agency and the Clerks' Union, and that jobs in 'joint service' on its trains were filled by right of seniority arising perforce of such bargaining agreements. Express messengers in 'joint service' are known and referred to by the Express Company and the Santa Fe as 'messenger-baggagemen'. 'Messenger-baggagemen', when handling express while in 'joint service', are subject to the direction, instruction and control of the Express Company. When they handle baggage, United States mail, etc., the Santa Fe retains the right to direct and instruct, and did direct and instruct, 'messenger-baggagemen' in all phases of such baggage work. The Santa Fe issued printed instructions to 'train baggagemen' governing the handling of baggage and mail carried by it. Such instructions were received and followed by 'messenger-baggagemen' in 'joint service'; and, various daily reports required to be made by train baggagemen

were made by 'messenger-baggagemen' and submitted to the Santa Fe's General Baggage Agent. All 'messenger-baggagemen' employed in 'joint service' were paid for all work performed by them directly by the Express Company. The Santa Fe reimbursed the Express Company to at least fifty percent (50%) of the compensation so paid 'messenger-baggagemen'. The Santa Fe also pays to the Express Company one-half of the Railroad Retirement Tax paid by the Express Company for express messengers into the Railroad Retirement Fund established by the Railroad Retirement Act of 1937, Title 45 U.S.C.A. § 228a et seq., etc. 'Joint-Servicemen' are and were subject to the provisions of the Railroad Retirement Act of 1937. In addition thereto, the Santa Fe grants passes to 'messenger-baggagemen' on the same basis that passes are and were granted by it to all Santa Fe employees, and 'messenger-baggagemen' receive from the Santa Fe, by reason of their 'joint service', other incidental advantages.

"In the year 1892, the Santa Fe and defendant Brotherhood of Railroad Trainmen (hereafter referred to as 'Trainmen') first entered into a contract prescribing rules, rates of pay and working conditions for brakemen and baggagemen employed by the Santa Fe. There has at all times since been in effect such a contract between said parties. The Brotherhood of Railway Trainmen is, pursuant to Section 2, Third, of the Railway Labor Act of 1926, Title 45 U.S.C.A. § 152, Third, the collective bargaining agent for all employees of the Santa Fe denominated as brakemen and baggagemen. Sections 29 and 23 of the bargaining agreement between the Santa Fe and Trainmen, provide:

" 'Article XXIX. The term "Trainman" or "Trainmen," as used in this agreement, is understood to mean freight and passenger Brakemen, and Baggagemen, with the further understanding that this definition does not change, alter or extend present application of these rules to baggagemen or train porters.'

" 'Article XXIII.

" '(a) All vacancies occurring in baggage runs not controlled by joint service shall be filled from the ranks of eligible and competent brakemen; oldest brakemen to have preference in all extra or special runs or excursion trains.

" '(b) When a brakeman is required to take charge of or handle baggage, regular or extra brakeman shall perform the service; oldest man to have the preference.'

"Some time prior to the year 1935, a grievance arose between the Santa Fe and twelve (12) baggagemen, eight (8) of whom were members of the class of train service employees represented by the Trainmen. As a consequence, thereof, a protest petition was filed by the Trainmen against the Santa Fe, before the First Division of the National Railroad Adjustment Board, pursuant to Section 3, of the Railway Labor Act of 1926, Title 45 U.S.C.A. § 153. Tersely stated, the dispute there involved arose out of the protest of twelve (12) baggagemen whose employment in baggage service on Santa Fe Trains Nos. 3 and 4, running between Chicago and Albuquerque had been discontinued on June 20, 1931, and whom the Santa Fe had replaced in such service with Barbers employed on said trains. Subsequent thereto, in the years 1939 and 1940, five (5) other protests were filed by the Trainmen against the Santa Fe, before the National Railroad Adjustment Board, First Division, involving the right to perform baggage work on certain other trains of the Santa Fe operating in the Eastern and Western Divisions. The substance of such protests was that the Trainmen claimed that 'the handling of baggage on any and all of the carrier's trains in service * * * properly belongs to trainmen holding seniority as brakemen', under the bargaining agreement the Trainmen had and now have with the Santa Fe; that express messengers, employees of the Santa Fe who did not have, or acquire, seniority as brakemen under such bargaining agreement should not be used as 'train baggagemen'; and, that certain brakemen, holding seniority rights, who were not given train baggage work, should 'be reimbursed for any monetary loss occasioned by reason of their displacement by express messengers.' In said proceedings, the Trainmen specifically alleged in their said protest claims,

and contended before the First Division, National Railroad Adjustment Board, that express messengers then engaged in baggage work by the carrier were 'employees of the A. T. & S. F. Railway Company' and that for such baggage work express messengers were paid 'exclusively out of the funds of the carrier (and) therefore, they are not joint employees' of the Santa Fe and Express Agency, so far as baggage work was there involved in such protest proceedings. Plaintiff and no members of the class he represents in this instant action, nor the Brotherhood of Railway & Steamship Clerks Etc. Union, were given any notice by the Santa Fe, the Brotherhood of Railroad Trainmen or the National Railroad Adjustment Board, of the pendency of such protest proceeding before the National Railroad Adjustment Board, First Division, and plaintiff and no member of the class he represents, or the Brotherhood of Railway & Steamship Clerks, Etc. Union, were made parties to, or appeared in person or otherwise, in any such proceedings. April 20, 1942, the employee representatives and referee, constituting a majority of the First Division, National Railroad Adjustment Board, entered and promulgated in said proceedings, Awards numbered 6635, Docket No. 7684; 6636, Docket No. 10405; 6637, Docket No. 7685; 6638, Docket No. 7686; and 6639, Docket No. 7687; referred to in the evidence. Plaintiff and all the members of his class did not learn of said proceedings and the effect of such awards until shortly before their services were terminated and they were displaced by brakemen, on September 15, 1945.

"At the time of the promulgation of such awards, 'joint-servicemen' on that part of the Santa Fe Railway known as the Coast Lines, handled practically all baggage, United States mail, Santa Fe company mail, and other items carried and handled by the Santa Fe on its passenger trains operated on the Coast Lines, and such work in part was handled by 'joint-servicemen' on that part of the Santa Fe Railway known as the Eastern and Western Lines. In the majority of instances, baggage and express carried on passenger trains then operated by the Santa Fe, was handled by 'joint-servicemen' in the employ and under the supervision, direction and control of the Santa Fe.

"After publication of the aforesaid awards, the Santa Fe filed petitions before the Railroad Adjustment Board, First Division, for a rehearing on said claims and protests. A majority of said Board failed and neglected to pass or rule on said motions for a rehearing for more than eighteen months. While said petitions for rehearing were so pending, and as a result of the impact of said awards, the penalties therein assessed against the Santa Fe, and upon demand of the Brotherhood of Railroad Trainmen, certain negotiations were carried on between representatives of the Trainmen and the Santa Fe for the purpose of settling the matters then in dispute between said parties and making effective the provisions of said awards. The awards of the Railroad Adjustment Board, First Division, above referred to, had not at that time been made effective or been applied by the Santa Fe. One S. C. Kirkpatrick, as a representative of the Santa Fe, and one Frank W. Coyle, as a representative of the Trainmen, were selected by the respective parties to carry on such negotiations. 'On or about April 27,' 1944, said individuals entered into an accord on behalf of the Santa Fe and the Trainmen, whereby the awards made by the National Railroad Adjustment Board, First Division, in the aforesaid proceedings, Nos. 6636, 6637, 6638, and 6639, were made effective and the penalties provided for therein were adjusted and paid by the Santa Fe to the brakemen involved in said proceedings. Neither the representatives of the Santa Fe nor that of the Brotherhood intended by the negotiations then conducted, or the accord or agreement then entered into, to alter, change or modify the terms of the bargaining agreement then existing between the Santa Fe and the Brotherhood of Railroad Trainmen in any respect. The purpose of said negotiations and the agreement effected by the parties thereto was to put the principles of the awards, supra, of the National Railroad Adjustment Board, First Division, into effect an to make a practical application of said awards to the baggage opera-

tions of the Santa Fe then conducted on its Eastern and Western Lines. As a consequence of said accord, the Santa Fe withdrew the petitions for rehearing previously filed before the First Division of the National Railroad Adjustment Board, because the subject-matter of said awards was disposed of by mutual agreement between the Santa Fe and the Trainmen, and said awards became final and binding on the Santa Fe.

"As a result of the awards, supra of the First Division of the National Railroad Adjustment Board and the accord then reached between the parties, implementing said awards and defining the manner in which they should be made effective, the Santa Fe terminated the service of all messenger-baggagemen then employed by it as 'train baggagemen' upon its Eastern and Western Lines, as of September 15, 1945, and thereafter engaged brakemen-baggagemen, members of the Brotherhood of Railroad Trainmen, to handle all such baggage on its passenger trains operated on its Eastern and Western Lines. Since September 15, 1945, the Santa Fe has only employed brakemen for the purpose of handling baggage on said trains. At the time messenger-baggagemen were employed in 'joint service' by the Santa Fe to handle baggage, and since September 15, 1945, that brakemen-baggagemen have handled baggage on its trains, they have been commonly referred to and known as 'train baggagemen'. A 'train baggageman' is an employee of the Santa Fe, and is a person handling and making necessary records of baggage, or baggage and mail, in the baggage car on a train. A train baggageman is not charged with any duties concerning the operation of the train.

"As a result of the discontinuance and termination of the employment of 'messenger-baggagemen' in 'joint service', for the handling of baggage on the Eastern and Western Lines of the Santa Fe, fifty-four (54) messenger-baggagemen, employees of the Santa Fe and members of the class whom plaintiff represents lost their jobs, not only with the Santa Fe, but with the Express Agency, also. Two hundred fifty (250) messenger-baggagemen were discontinued in 'joint service' on the Santa Fe as a result of said awards, and the implementation thereof by the accord between the parties, as above stated. Such action resulted in a general reduction of the hours of employment and wages of all such messenger-baggagemen in joint service on the Santa Fe and the loss of other advantages previously enjoyed by said joint-servicemen by reason of their employment with the Santa Fe.

"The termination of the use of joint-servicemen in the employ of the Santa Fe for the handling of baggage on the Eastern and Western Lines of the Santa Fe, directly resulted from the awards of the National Railroad Adjustment Board, First Division, Nos. 6635, 6636, 6637, 6638 and 6639, above referred to, and the letter agreements entered into between the Santa Fe and the Brotherhood of Railroad Trainmen for the purpose of implementing said awards and putting them into effect; that had it not been for the promulgation of said awards by the National Railroad Adjustment Board, First Division, and the accord reached between the Santa Fe and the Brotherhood of Railroad Trainmen at the insistence and demand of the Trainmen implementing said awards and putting the same into effect, the Santa Fe would not have discontinued the employment of messenger-baggagemen in joint service and in its employ for the handling of baggage on passenger trains operated by it on its Eastern and Western Lines on September 15, 1945. The discontinuance and termination of the employment of joint-servicemen in the employ of the Santa Fe was induced, procured and brought about by the Trainmen by the filing before the Railroad Adjustment Board the claims and protests above referred to, which resulted in the promulgation of the awards and accord implementing the same, and the insistence and demand of the Brotherhood of Railroad Trainmen made against the Santa Fe, that said awards be put into effect and complied with. The Santa Fe did not will to terminate the employment by it of 'messenger-baggagemen' on its Eastern and Western Lines, independent of the awards of the National Railroad Adjustment Board, First

Division, and the insistence and demand of the Brotherhood that said awards be complied with, and put into effect. The Santa Fe does not now will to discontinue or terminate 'messenger-baggagemen' now in its employ upon the Coast Lines of its system, but because of the penalties assessed against it perforce of the awards, supra, and the demands the Brotherhood of Railroad Trainmen is now asserting against the Santa Fe, it is threatening to and will discontinue such 'joint service' on its Coast Lines.

"The Brotherhood of Railroad Trainmen new assert the right to perform and handle all baggage on any and all Santa Fe trains now in service by virtue of the awards of the National Railroad Adjustment Board, First Division, and the letter agreements entered into between the Santa Fe and the Trainmen, implementing said awards and making the same effective, and will continue to so assert, insist and demand, and thereby compel, induce and procure the further and continued discharge and displacement of messenger-baggagemen, employees of the Santa Fe. The enforcement of said awards and letter agreements implementing the same and making them effective deprive plaintiff and the members of his class, employees of the Santa Fe, of the right to continue to perform baggage work for the Santa Fe, at the will of the Santa Fe, uninfluenced and without illegal interference or compulsion of the Trainmen, and the impact of the awards of the National Railroad Adjustment Board, supra."

### Opinion.

(1) Appellant B. of R. T. has specified nineteen matters of fact included in the fact findings as to each of which it has earnestly contended that the court was clearly in error and that there was no substantial evidence to sustain the court's finding. Examination of the whole record discloses that each of the questioned findings is supported by substantial evidence and that none was clearly erroneous. We conclude that the findings as a whole are sustained by the evidence and must be taken as established for decision on the appeal.

■ (2) It is argued for appellant that the plaintiff failed to prove that the jurisdictional amount of $3,000.00 was involved. It is stressed that it was not shown, and the court did not find, that any one of the messenger-baggagemen who testified at the trial had actually lost the sum of $3,000.00 in wages at the time of the trial by reason of the awards and the implementation thereof and the substitution of members of the B. of R. T. for members of the plaintiff class of joint servicemen to handle baggage and mail on the passenger trains. But in this class action, brought under Rule 23(a) (3), Federal Rules of Civil Procedure, 28 U.S.C.A., the common relief sought was protection by injunction from wrongful interference with the common right of all the members of plaintiff's class to the employment they had and depended upon to earn their living. Defendant's course of conduct was directed against them as a class and that it had caused them more than $3,000.00 loss and if permitted to continue would cause many times that amount of loss was clearly established by the evidence. Already at the time of trial fifty-four men in the joint service who would have continued therein save for defendant's action, had been removed from it and the wages in the aggregate of many thousand dollars were diverted from the members of plaintiff's class to members of the defendant B. of R. T. and the jobs of at least two hundred more of the members of plaintiff's class were similarly threatened. It is plain that the value of the right involved in the suit which plaintiff sought to save by injunction and defendant sought to obtain for its own members amounted to much more than $3,000.00, and the trial court was not in error in finding as a fact and holding as a matter of law that the jurisdictional amount was involved. Nord v. Griffin, 7 Cir., 86 F.2d 481.

■ (3) Appellant contends here, as it did in the trial court, that the plaintiff's bill of complaint failed to state a justiciable cause of action in that it merely presented a labor dispute within the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq. which was for negotiation, meditation or arbitra-

tion as provided by the Railway Labor Act, 45 U.S.C.A. § 153, but we sustain the conclusions of law announced by the trial court to the contrary as follows:

"The complaint herein states a claim upon which relief can be granted to plaintiff and the members of the class plaintiff here properly and legally represents, and the motion of defendant Brotherhood of Railroad Trainmen joined in its answer should be, and the same is hereby, overruled.

"Plaintiff and the members of the class he here represents are and were while in 'joint service' handling baggage, United States mail, company mail and other property of Santa Fe, carried in its baggage cars, employees of the Santa Fe, at will. As such employees, they are and were 'Trainmen' within the purview of Section 3(h), (Title 45, U.S.C.A., Section 153(h)), Railway Labor Act, and entitled to due notice and to be heard in the dispute involved in Awards 6635, Docket No. 7684; 6636, Docket No. 10405; 6637, Docket No. 7685; 6638, Docket No. 7686; 6639, Docket No. 7687; before the National Railroad Adjustment Board, First Division, in that their employment as 'train baggagemen' with the Santa Fe, was directly determined and affected in said proceedings.

"That the aforesaid awards of the National Railroad Adjustment Board, First Division, are illegal and void, in that they were rendered by said Board, in violation of Section 3(j), Title 45, U.S.C.A. § 153(j), of the Railway Labor Act, because plaintiff and the members of the class whom he represents involved in said proceedings, were given no notice thereof, or afforded an opportunity to be heard therein, either in person or by counsel.

"Compliance by the Santa Fe with the provisions of said awards deprives plaintiff and the class he represents, of property rights without due process of law, in violation of the Fifth Amendment to the Constitution of the United States."

The above quoted conclusions of law are supported by the decision of the Court of Appeals of the Seventh Circuit in Hunter v. Atchison T. & S. F. Ry. Co., 171 F.2d 594, and we are in accord with that decision.

(4) The appellant further contends that even if the questioned awards made by the First Division of the National Railroad Adjustment Board were void as against the plaintiff class of workmen in joint service for want of notice to them of the proceedings, that nevertheless, they became bound and all their claims of right to their railroad employment were foreclosed by the so-called letter agreements between the railroads and B. of R. T. of April 27, 1944, and February 4, 1945, put into effect on September 15, 1945. But the questions of the relations of the letter agreements to the awards, and whether or not the impact of the awards and the course of conduct of the B. of R. T. in procuring and insisting upon execution of its awards, forced them upon the railroads and whether or not the railroads willed or were coerced by the awards to agree to terminate the employment of the joint servicemen whom it employed at will were purely questions of fact passed upon by the trial court after very careful consideration. The findings justify the conclusions drawn by the trial court as follows:

"As employees at will of the Santa Fe, plaintiff and the members of the class he here represents were entitled to such employment at the will of the Santa Fe, without illegal interference, compulsion and unjustified interference by the Trainmen. That the insistence and demands of the Trainmen that the substance of the illegal and void awards of the National Railroad Adjustment Board be applied and made effective by the Santa Fe, under the circumstances here revealed, and the implementation and application of said awards effected by the letter agreements entered into between the Santa Fe and Trainmen, is and was unjustified, unwarranted and illegal interference with the employment at will by the Santa Fe, of plaintiff and the members of the class he here represents, and should be restrained and enjoined by this Court.

"That the letter agreements entered into between the Santa Fe and the Trainmen,

not intended by the parties thereto to effect a modification, change or supplement to the bargaining agreement existing between said parties, this Court has jurisdiction to construe and determine the legal effect thereof, and upon a finding that said agreements are an application and implementation of illegal and void awards rendered by the National Railroad Adjustment Board, may restrain and enjoin the enforcement or further carrying into effect of said agreements."

The many other arguments and contentions very ably presented for B. of R. T. have been considered, but it does not appear that the trial court was clearly in error as to any of its findings and we hold that on those findings the court rightly concluded that the awards made by the Board were void as to the plaintiff's class of workmen for want of notice to them; that the agreements subsequently made were merely to apply and implement the awards and did not evidence new or modified collective bargaining agreements between the railroads and the B. of R. T. and did not destroy or terminate the rights of the plaintiff class as they existed prior to the awards. The trial court was not in error in issuing its injunction which was properly narrowed in scope and limited in its effect as stated in the injunctional order as follows:

"It is further ordered, adjudged and decreed that the effect of this injunction is to place the parties in the same legal position toward each other which they occupied on September 15, 1945, and as though Awards 6635 to 6639, inclusive, of the First Division of the National Railroad Adjustment Board had not been rendered, and as though no agreements had been entered into between defendant carriers and the Brotherhood of Railroad Trainmen implementing said Awards and enforcing the same.

"It is further ordered, adjudged and decreed that defendants are not restrained and enjoined from pursuing any remedies they may have under the Railway Labor Act."

The judgment, order and decree appealed from are accordingly,

Affirmed.