91 F.Supp. 787 (1950)
DWELLINGHAM et al.
v.
THOMPSON et al.
No. 6917(1).
United States District Court E. D. Missouri. E. D.
July 7, 1950.
*788 *789 *790 Jacob N. Gross, Chicago, Ill., Milton Goldstein, St. Louis, Mo., for plaintiffs.
Thos. T. Railey, St. Louis, Mo. (Russell L. Dearmont, St. Louis, Mo., of counsel), for Missouri Pac. R. Co. and for T. Short, as member of a certain "Special Board", etc.
Charles R. Judge, St. Louis, Mo., for defendants W. D. Hendricks and J. A. Rolfes.
MOORE, Chief Judge.
In settlement of the Missouri Pacific strike last year, the Railroad and the various unions submitted a number of their disputes to arbitration under a Special Board of Adjustment, which was set up by agreement of the various parties, and is hereinafter called the Special Board. One of these disputes was between the "Dining Car Stewards", hereinafter called the Stewards, and the Railroad.
The plaintiffs are six employees of the Missouri Pacific who are known, themselves, as waiters-in-charge. They sue for themselves and as representatives of a class. Jurisdiction is asserted under Sections 1331, 1332, and 1337 of Title 28 U. S.C.A. Five of the plaintiffs are residents of Missouri, and one a resident of Arkansas.
The following are defendants: the Trustee of the Missouri Pacific, Guy A. Thompson; T. Short, who is the personnel manager of the Missouri Pacific, and who is sued in his capacity as a member of the aforesaid "Special Board"; W. D. Hendricks and J. A. Rolfes, dining-car stewards, who are sued individually and as representatives of a class; and J. A. Rolfes and Frank Aldrich are sued as representatives of the Brotherhood of Railway Trainmen.
The plaintiffs were employed by the Missouri Pacific as waiters-in-charge, as were other members of their class. In 1934, the Missouri Pacific entered into an agreement with the Dining Car Employees Union, which agreement was amended in 1942 to include specifically waiters-in-charge. In 1945, the agreement now in effect between the Railroad and the Local of which the waiters-in-charge are members, was executed. Prior to the award of the "Special Board", made in accordance with the agreement referred to above, certain of the plaintiffs occupied certain positions on certain trains, as employees-at-will of the Railroad, being interchanged in these positions with stewards.
Neither the plaintiffs or their bargaining representative were parties to the agreement by which the strike was settled, and under which the Special Board was created. This agreement is attached to the complaint. It provides that the Special Board shall consist of three members; one appointed by the Railroad, one by the Brotherhoods, and a third to be selected by the two members so appointed by the parties. If the two members could not agree on a third, they were to request the National Mediation Board to name a neutral person. The Special Board was to make its own rules of procedure, except that it could not deny either party the right to be heard, etc. Awards were to be rendered "in accordance with the provisions of Section 3, First, of the Railway Labor Act, which shall have the same force and effect as awards of the National Railroad Adjustment Board." A majority of the Special Board was required to render an award. Time limitations were placed on the various steps provided for in the agreement, though the parties could agree to extend the period for making the awards. The Board was to cease to function upon rendition of the awards, though either party could request the Special Board to interpret an award, if a dispute as to its meaning arose within thirty days after its rendition.
*791 The award of the Special Board gave the disputed positions to the Stewards. As a result of this award, the Railroad removed certain of the plaintiffs, and replaced them with stewards. The waiters-in-charge (plaintiffs) had no notice of the arbitration and were not parties in the proceedings before the Special Board. The Special Board ceased to function insofar as the award in question is concerned.
Plaintiffs allege that they have no adequate remedy at law, that they have been and will be caused irreparable injury, and that they have been and will be deprived of their rightful employment. The prayer is for a preliminary and permanent injunction restraining any action pursuant to the award and restoring plaintiffs to the disputed jobs, and for damages.
After the complaint was filed, an Order to Show Cause why a Temporary Injunction restraining the Railroad from giving any effect to the award should not be made, was issued. The temporary injunction was denied. Subsequently one of the defendants filed a motion to dismiss on the grounds (1) that the Court is without jurisdiction of the subject matter, (2) that the Court is without personal jurisdiction of some of the defendants, and (3) that the complaint fails to state a claim upon which relief can be granted. The case came to trial, was heard, and the motion to dismiss was not ruled on.
The plaintiffs claim that they were entitled to notice of the arbitration, and to participate as a party in the arbitration because their jobs were affected.
This right is asserted under the Railway Labor Act, Title 45 U.S.C.A. § 151 et seq., hereinafter called the Act, and under the Fifth Amendment. The Act, briefly, provides that labor disputes shall be handled in the usual manner up to the chief operating officer of the Carrier. At this point several alternatives, none of which is compulsory, are available to the parties. Either party, or both, may take the dispute to the National Railroad Adjustment Board or to a Regional, Group, or System Board, if it chooses. In case of the former the law is that the Fifth Amendment requires that notice must be given in a jurisdictional dispute  such as the one in the case at Bar  to those who will be displaced from their jobs, in the event the claiming union is upheld in its demand by the Board. Nord v. Griffin, 7 Cir., 86 F.2d 481; Hunter v. Atchison, T. & S. F. Ry. Co., 171 F.2d 594; Brotherhood of Railroad Trainmen v. Templeton, 8 Cir., 1950, 181 F.2d 527. In case of the latter, it was held in Edwards v. Capital Airlines, 84 U.S.App.D.C. 346, 176 F.2d 755, that persons in the plaintiffs' position are entitled to notice and participation in a proceeding before a System Board established under Section 184, Title 45 U.S.C.A., which section provides for the establishment of System Boards for Airline Carriers in accordance with the provisions of the Railway Labor Act.
Under the Act a third alternative is also available. The parties, by agreement of both only, may submit the dispute to a private board of adjustment. Sections 7, 8, and 9 of the Act. In this event, the statute requires a certain procedure (which was not followed in the case at Bar), and in such event the award of the private Board is given by the Act a significance which an award made by arbitration at common law would not have. It is to be emphasized that none of these three available procedures is required by the Act.
Plaintiff's first argument is as follows:
(1) That arbitration was actually had under the Railroad Labor Act, the Special Board being either equivalent to a Regional or System Board, or being established under the statute so as to constitute a private board. Or, in the alternative, that even if the arbitration in question was not had under the Act, the requirements of the Act in regard to notice and participation apply to arbitration had outside the Act. Or, that the Fifth Amendment requires notice and participation. Or, that the Act forbids any kind of arbitration, except that which is expressly provided for in the Act.
(2) Therefore, the award of the Special Board is void, because plaintiffs were not notified and had no opportunity to participate, or because arbitration was not had under the Act.
*792 The plaintiffs' claim that the arbitration of the dispute was had under the provisions of the Act, Section 3, Second, permitting establishment of a Regional, Group, or System Board, is clearly without merit. This special Board cannot be held to constitute such a board as is required by the Act. Section 3, Second, contemplates the establishment of a Regional, Group, or System Board which is permanent in nature. It is established to settle disputes which will arise after its creation, and its existence prevents a party from taking the dispute to the National Railroad Adjustment Board, unless it has ceased to exist pursuant to the ninety-day notice which may be given under the statute. Atlantic Coast Line R. Co. v. Pope, 4 Cir., 119 F.2d 39.
Under Section 7 of the Act, a Private Board established under that and the following sections is required "to give the parties to the controversy a full and fair hearing, which shall include an opportunity * * * to present their case * * *". Plaintiffs contend that since their jobs were affected, they are "parties to the controversy" within the meaning of this section, and that since arbitration was had under this section, they are entitled to have notice and to participate.
It is not necessary to decide whether plaintiffs are "parties to the controversy", although it may be said that they have a definite interest in the controversy. The contention that the special board is the equivalent of a private board under Sections 7, 8 and 9 of the Act is without merit. The briefs go into this point at length and point out the differences in the agreement establishing the special board and the requirements of the Act. The agreement does not state that arbitration is had under the Act, as is required by Section 8(b). It merely states that awards shall be rendered in accordance with Section 3, First, and that the awards shall have the same effect as awards of the National Railroad Adjustment Board. This provision conflicts with sub-section (l), which says the awards must be conclusive. Moreover, the agreement was not filed with the Mediation Board, nor was the award filed in the District Court as required by subsection (k). Nor was sub-section (f) complied with.
The plaintiffs' third contention is that the Act sets out requirements of notice and participation which are mandatory when arbitration is had under the statute, and that even when arbitration is had without the statute these same requirements apply, either by implication of the Act or the requirement of the Fifth Amendment. There is no law on this issue. Plaintiffs' fourth contention is that arbitration must be had under the Act or not at all.
The Act nowhere provides for compulsory procedure. In other words, the parties do not have to arbitrate if they don't want to, although one party can force another before the National Board, or before a System Board if one has been established. It seems to me that the policy of the Act was to encourage private settlement of disputes wherever possible, but to provide a system whereby one party could force another to a binding arbitration. Plaintiffs state the history of the Act in their briefs in an effort to show that Congress intended to cover the field of arbitration, and to exclude any arbitration except as provided for by the Act. It is my feeling that Congress still will permit any kind of settlement, by arbitration or otherwise, which the parties desire, but has merely made available a procedure whereby one party can force the other to a binding arbitration and thereby have enforcement by the Courts of arbitration which is held under the Act. The purpose of the 1934 Amendment of the Act was "* * * to add decision where agreement fails * * *". Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, at page 728, 65 S.Ct. 1282, 1292, 89 L.Ed. 1886. My conclusion is that the Act permits arbitration to be held by the parties other than in accordance with the Act, and that when such arbitration is so held, it is at common law, and is unaffected by the Railway Labor Act. Therefore, the requirements of notice and participation are not implied, and are not here applicable. The Railroad and the Defendant Union and its employees did not avail themselves of any right given them by the Act.
*793 The Act, as construed in Howard v. Thompson, D. C., 72 F.Supp. 695, permits the Mediation Board to determine the extent of a craft for the purpose of establishment of appropriate bargaining units. Once a craft is established, the representative of the craft is under a duty to represent the minority as well as the majority of that craft. And in the event that the representative urges contentions adverse to the minority, the minority is entitled to notice and opportunity to be heard. Steele v. L. & N. R. Co., infra. Assuming the craft to have been properly established, a minority will not be injured. It is possible that the plaintiffs should have been represented by the defendant Brotherhood, and that the Mediation Board has not properly classified them as a separate unit, in which event plaintiffs would be entitled to protection. See Howard v. Thompson, D.C., 72 F. Supp. 695. But this claim has not been made. In other words, the Act by requiring proper classification by the Mediation Board, establishes a requirement which at least in theory tends to prevent the occurrence of jurisdictional disputes, and thus tends to place the dispute between majority and minority members of a single union, in which event the minority is protected. In construing the Act to determine whether one union in dealing with the company is required to give notice to or to represent another union this is one factor to be considered.
Plaintiffs state that though they are employees at will, they are employees at the will of the carrier, and that the carrier should be free from illegal interference or compulsion in the exercise of its discretion. The cases cited in support may be distinguished. In Truax v. Raich, 239 U. S. 33, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A., 1916D, 545, Ann.Cas.1917B, 283, there was state action in the form of a statute restricting the percentage of aliens which an employer might hire, and the Fourteenth Amendment was thus invoked. In Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, and in Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, it was held that a statute of the Federal Government required that minority members of a union have a right to representation, and that therefore the representatives of the union majority, when urging contentions adverse to the minority, must give the minority notice and opportunity to be heard. In Hunter v. Atchison, T. & S. F. Ry. Co., supra, in Brotherhood of Railroad Trainmen v. Templeton, supra, and in Nord v. Griffin, supra, it was also held minority members of a union are entitled to notice and opportunity to be heard in proceedings before the National Railroad Adjustment Board, which board was, of course, created by Federal statute. In Edwards v. Capital Airlines, supra, the same requirement of notice and opportunity to be heard was applied to proceedings before a System Board in regard to non-members of a union which urged claims adverse to the non-members. Once again, the proceedings were under the statute, as the System Board is established pursuant to statute and given statutory powers. Though the language in the Edwards case is apparently broad enough to cover the situation in the case at bar, 176 F.2d loc. cit. 761, I think the decision is confined to a situation where arbitration was had pursuant to statute. In the present case, it has been held that the arbitration proceedings in question were not held under the Act, and that the parties to the agreement to arbitrate did not avail themselves of any right created by statute. The Fifth Amendment therefore is not applicable, as plaintiffs have not been deprived of a constitutional right by statute. In the Steele, Tunstall, and Edwards cases, supra, the right was held to have been created by statute, when proceedings had under the statute affected the plaintiffs' employment. See, also, Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886. Here, the arbitration was not had under the statute. Furthermore, in Howard v. Thompson, D.C., 72 F.Supp. 695, it was held in a similar case that where there is a jurisdictional dispute between unions, one union is under no responsibility to represent the other in negotiating a contract with the employer for the disputed work. There is no reason to differentiate between *794 negotiation for a contract and an arbitration held outside the Act which reaches the same result. The Steele case is specifically distinguished in the Howard case, 72 F.Supp. loc. cit. 701.
As plaintiffs were employees at will, a cause of action based on contract for their loss of employment and consequent damages, is not stated. Assuming that because the parties to the agreement to arbitrate stated in their agreement that the awards should be made in accordance with Section 3, First of the Act, that that Section was incorporated into the agreement, it cannot be argued that plaintiffs were thereby given a right to notice and participation. It does not appear that the parties to the agreement intended that the reference to Section 3, First, was intended to confer any benefit on third persons not a party to the agreement.
Plaintiffs' second argument is that notice should have been given them under Section 2, Seventh, and Section 6 of the Act. Section 2, Seventh reads: "Seventh. No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."
Section 6 provides for at least 30 days' notice of any intent to change agreements affecting pay, rules and working conditions. Since it is held that the arbitration in question was not had under the Act, this case is very similar to Howard v. Thompson, supra.
In the Howard case, the plaintiff was a porter who was a member of a union whose members had performed certain duties for the defendant carrier for a number of years. The defendant Brotherhood of Railway Trainmen had claimed the right to perform these duties for some time. Finally, under threat of strike, the defendant Brotherhood forced the carrier to enter a new contract, which specifically awarded the disputed duties to the Brotherhood. The carrier then notified the porters that their positions, except for chair car porters, would be abolished and that they would be discharged. Plaintiff and other members of his union had no notice of the contract negotiations. The carrier would have preferred to continue to employ the porters, but under coercion gave the disputed work to the Brotherhood. Judge Duncan held that under the Act the defendant Brotherhood was under no duty to represent the porters, and that the contract was not void; that the question as to whether the porters were improperly classified and whether the Brotherhood should be required to represent the porters was for the Mediation Board to decide; and that the porters were entitled to notice under Sections 2 and 6 of the Act. As to Section 6 the Court said:
"It is true carriers seek to discharge all of the porters rather than change the rates of pay or rules under which they work, but the abolishment of their jobs and their discharge clearly result from the execution of the contract of March 7, 1946, taking from the porters certain functions and duties and bestowing them elsewhere.
"It is clear to me that prior to March 7, 1946, there did exist a jurisdictional dispute over the performance of the duties of brakemen by train porters, and that both under the contract between the train porters and the carriers, and under Section 152, Seventh, supra, and Section 156, supra, it was the duty of the carriers to give the statutory notice. This they did not do. Immediately following the signing of the contract of March 7, 1946, they notified all the porters of their separation from the service. Were it simply a labor dispute involving jurisdiction over certain functions or duties, probably a court of equity would be without jurisdiction to grant relief pending disposition of the question by the Administrative Boards.
"Should the Mediation Board determine upon application that the porters have been improperly classified for purposes of representation, and that they should have been represented by the Brotherhood, or, if the National Railroad Adjustment Board should hold that under the contract with the Brotherhood of Trainmen, Brakemen, Porters, Switchmen, Firemen and Railway Employees, Incorporated, or because of long standing custom the porters, as such, *795 are entitled to perform the functions of brakemen, then clearly the plaintiff and his group will suffer irreparable injury through the loss of their jobs, for which they have no administrative remedy and no adequate remedy at law." [72 F.Supp. 703]
A restraining order was accordingly issued to allow the plaintiff's labor organization representative a reasonable time in which to invoke the jurisdiction of the Mediation Board and National Railroad Adjustment Board, the former Board to decide the question of representation, the latter to decide the jurisdictional dispute on the merits. The case has been argued on appeal, but a decision has not yet been rendered.
The injunction in the Howard case was "based upon the failure of the company to give the required 30 day notice and upon no other grounds." Randolph v. Missouri-K.-T. R. Co., D.C., 78 F.Supp. 727 at page 729. The similarity between the Howard case and the case at bar is apparent. In both, a jurisdictional dispute existed, and the company was forced to give the disputed work to one union to exclusion of the other. In the one case, the company entered into a new contract under threat of a strike; in the other, in the face of a refusal to terminate an existing strike, the company agreed to submit the dispute to arbitration. In the Howard case, the Court found that the porters would suffer irreparable injury from the loss of their jobs. In the present case, the evidence showed that the plaintiffs had been employed in other jobs. But it is clear that there will be fewer jobs available in the future for the plaintiffs and others of their class on whose behalf they sue. In neither case was the required thirty day notice given. It is my opinion that the Howard case should be followed here.
Further authority for the argument that removal of plaintiffs from their jobs constitutes a change in "working conditions" within the meaning of Section 2, Seventh of the Act, is found in Missouri-K.-T. R. Co. v. Randolph, 8 Cir., 164 F.2d 4, 6. In that case, the train porters and the trainmen both laid claims to the same work on the ground that their contracts, read in the light of custom and usage, awarded the disputed work to them. The railroad intended to accede to the demands of the trainmen and "after due notice and in accord with the provisions of the Railway Labor Act, 45 U.S.C.A. § 152, Seventh and § 156, to cancel the contract with the train porters * * *". The lower court awarded an injunction maintaining the status quo, declaring the train porters' rights under their contract, and restraining the trainmen from interfering with the contractual relation between the train porters and the railroad. The Court of Appeals held that the injunction was erroneous, on the ground that the threatened action of the trainmen was not tortious, and that the railroad had the legal right under Section 2, Seventh of the Act, to proceed as it intended to in respect to the train porters' contract. As to the porters' rights, the Court said: "Insofar as the railroads propose to terminate the existing contract with the porters and to change their working conditions, the statute gives the porters the right to resort to the Mediation Board, 45 U.S.C.A. § 155, and that Board is required to use its best efforts to bring about an amicable settlement, 45 U.S.C.A. § 152. The railroads are required to exert every reasonable effort to maintain agreements concerning working conditions and to settle all disputes in order to avoid interruption to commerce, 45 U.S.C.A. § 152, First."
This decision clearly illustrates the right of the plaintiffs in the present case to notice under Section 2, Seventh. It is clear that failure to give the thirty-day notice here deprived plaintiffs of their "right to resort to the Mediation Board".
This leads to the conclusion that the Court has jurisdiction under Section 1337, Title 28 U.S.C.A., relating to claims arising under Act of Congress regulating commerce. The contention that the Court is without personal jurisdiction of the defendant Brotherhood of Railway Trainmen is without merit. An order will be entered overruling the motion to dismiss.
A restraining order should be issued pending determination by the National *796 Railroad Adjustment Board of the question of jurisdiction as to the disputed positions as between the waiters-in-charge and the dining-car stewards, or for a reasonable time within which the plaintiffs through their labor organization representative may invoke the jurisdiction of that Board.
Findings of Fact, Conclusions of Law and a Decree in accordance with the views expressed herein may be submitted.