## HESTER et al. v. BROTHERHOOD OF RAILROAD TRAINMEN et al.

### No. 14541.

United States Court of Appeals
Eighth Circuit.

Aug. 12, 1953.

Thomas P. Downs, Kansas City, Mo., for appellants.

John Murphy, Kansas City, Mo. (J. Gordon Siddens and Tucker, Murphy, Wilson & Siddens, Kansas City, Mo., on the brief), for appellees.

Before SANBORN, JOHNSEN and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

The present action seeks to draw into court, as a justiciable controversy, in further phase and different form than was before us in Brotherhood of Railroad Trainmen v. Templeton, 8 Cir., 181 F.2d 527, the dispute which has existed for some years, between the craft of brakemen on the Santa Fe Railway system and the craft of "messenger-baggagemen" (as express messengers) engaged in joint service for Railway Express Agency Incorporated and Santa Fe, over the right of such messenger-baggagemen, as against the brakemen, to handle baggage, mail, railroad correspondence, etc. on baggage cars for Sante Fe, in conjunction with their work of handling express in such cars for Railway Express.

Both Railway Express and Santa Fe are carriers within the definition and application of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., and its companion statutes. The contract dealings of the messenger-baggagemen as to wages and the other general conditions of their work have always been with Railway Express (and its predecessors), and those of the brakemen have always been with Santa Fe. For collective bargaining purposes under the Railway Labor Act, the representative of the messenger-baggagemen (as express messengers) has been the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, and the representative of the brakemen has been the Brotherhood of Railroad Trainmen.

The performing of the tasks referred to for Santa Fe by the messenger-baggagemen has rested upon agreements or arrangements made between Railway Express and Santa Fe and not upon any contract entered into directly between Santa Fe and the messenger-baggagemen as parties. Such joint-service arrangements, to the extent that Santa Fe has desired and availed itself of them, have in practice had existence and operation between Railway Express (with its predecessors included in the term) and Santa Fe, continuously since prior to 1892. From 1892 on, the contract of the brakemen with Santa Fe has been made to contain a provision that "all vacancies occurring in baggage runs *not controlled by joint service* [emphasis ours] shall be filled from the ranks of * * * brakemen."

All of the general matters just recited are part of the facts recognized and accepted in relation to the class adjudication sought and the class relief granted to the messenger-baggagemen in the Templeton case. In the Templeton case, an injunction was issued by the trial court and sustained by us on appeal, in favor of the messenger-baggagemen, against the Brotherhood of Railroad Trainmen and the Santa Fe, forbidding each of the latter from according any legal effect to an award of the National Railroad Adjustment Board, First Division, 45 U.S.C.A. § 153, which had purported to determine that the work done by the menssenger-baggagemen, in joint service, of handling baggage, mail, railroad correspondence, etc. for Santa Fe, belonged to the brakemen under their contract with Santa Fe, but which award had been made by the Adjustment Board without any notice or opportunity for hearing to the messenger-baggagemen or their representative under the Railway Labor Act. The decree also prevented such acts of implementation

as had been engaged in by Santa Fe and the Brotherhood in recognition of the void award from having any effect upon whatever right to the performance of the work in question the messenger-baggagemen might otherwise have.

It was specifically emphasized in the decree that its object and consequence were to leave the messenger-baggagemen and the brakemen in the same legal position as to the work involved that they had occupied in relation to each other before the making of the void award by the Adjustment Board, and before the attempted effectuating of the award between Santa Fe and the Brotherhood by a transfer of such work from the messenger-baggagemen to the brakemen. See 181 F.2d at page 535. In the transfer which had thus been made, the Santa Fe had not recognized any right on the part of the brakemen to have the work taken away from the messenger-baggagemen, except as it regarded the Adjustment Board's award as compelling that result. The injunctive decree further took pains to make it clear that the way was left open to all of the parties to pursue such paths and remedies as were provided by the Railway Labor Act for having the conflicting asserted rights between the two groups resolved and getting the controversy settled. Id.

In the state in which the dispute was thus left by the Templeton case, four of the messenger-baggagemen, instead of undertaking to have whatever rights might exist in favor of themselves and their group determined, established and remedially disposed of under the provisions of the Railway Labor Act, are now attempting to bring the situation into court once more, in the form of a suit for damages, compensatory and punitive, in the amount of $7,820,000, instituted in the federal court in Missouri, against the Brotherhood of Railroad Trainmen, its officials, agents and members, for the benefit of themselves individually and of approximately 270 other unnamed messenger-baggagemen as a class, based on the Brotherhood's actions in having sought and

obtained before the Adjustment Board the void award in favor of the brakemen, and in having had that award recognized and effectuated by the Santa Fe, through a transfer on the basis thereof, prior to the Templeton decree, of the work involved, from the messenger-baggagemen to the brakemen. The trial court, on motion of the defendants, entered a summary dismissal of the action, and the plaintiffs have appealed.

Reversal is sought here on the theory and contention—using the language of plaintiffs' brief—"that the Brotherhood of Railroad Trainmen is the collective bargaining representative for both brakemen and baggagemen on the Santa Fe System, and that the B. of R. T. has failed and refused to represent their [the plaintiffs' and the other messenger-baggagemen's] interests in the train baggage work and has discriminated against them and thereby caused them to be deprived of that part of their employment." [1]

Beyond the questions which might lie in the way of recognizing such a pecuniary cause of action as legally existing in relation to the duties of a bargaining representative under the Railway Labor Act, or of viewing such pecuniary damages as are here sought as having been in legal concept actually sustained under the status in which the Templeton decree left the rights of the parties in relation to each other and to Santa Fe, or of permitting the plaintiffs to make a representative assertion of any such right to damages as could at all exist, the plaintiffs would not in any event be entitled to ask that such damages as are here claimed be made the subject of judicial consideration, without an ability on their part to establish, in the manner and upon the basis required by the Railway Labor Act, that the messenger-baggagemen constituted part of the craft for which the Brotherhood of Railroad Trainmen was the statutory bargaining representative, and to the members of which it as such owed a fiduciary responsibility under the Act.

1.  The things done by the Brotherhood here are not claimed to have had a racial basis or motive, as in Brotherhood of Railroad

Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283.

But the establishment of that fact as a status existing within the purview and operation of the Railway Labor Act, it is plain on the face of the situation, from our own records, as well as from the showing made by the defendants in connection with their motion to dismiss, that the plaintiffs are not here in a position legally to make. On the facts recognized and accepted in the Templeton case, as indicated above, the messenger-baggagemen were accorded judicial aid and protection on the basis of their having previously had an established craft status under the Railway Labor Act, as express messengers, hired by and making their contractual arrangements with Railway Express, having the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees as their constituted bargaining representative for purposes of their employment relations and conditions, and having been engaged in performing duties for Railway Express and duties for Santa Fe, as a matter of joint service, on the basis of agreements or arrangements entered into between the two carriers—with whatever statutory and other legal rights there might inhere in all of these things.

In relationship to what has just been said, it also is clear that the Brotherhood of Railroad Trainmen has never regarded the joint-service messenger-baggagemen as constituting part of the craft represented by it. As the quotation set out above from the plaintiffs' brief itself admits, the Brotherhood expressly denies any craft responsibility on its part to the messenger-baggagemen. This position the Brotherhood has continuously taken in its carrier dealings, ever since 1892, when, as previously noted, it made its first collective bargaining agreement with Santa Fe on behalf of trainmen and provided, among other things, for the right of brakemen to handle baggage work

in the future on "runs not controlled by joint service."

If, as against these established conditions and historic realities of the industry, there exists any basis for the messenger-baggagemen to claim that they should be regarded as belonging or entitled to belong to the craft of trainmen represented by the Brotherhood, and that the Brotherhood should be held to owe them the obligation of representing their interests as members of that craft, it is manifest that there is presented for consideration a disputed question of craft classification or craft scope under the Railway Labor Act, which it is not open to anyone to resolve except the National Mediation Board. See 45 U.S. C.A. § 152, Ninth; Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61; General Committee of Adjustment, etc. v. Missouri-Kansas-Texas R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76; Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 775, 72 S.Ct. 1022, 1026, 96 L.Ed. 1283. And until the plaintiffs have sought and obtained from the Mediation Board such an establishment of their claimed and disputed craft status, they necessarily are without any foundation in the situation for legally sustaining the critical allegation on which their suit is attempted to be rested.[2]

The trial court, therefore, could not have granted plaintiffs a recovery against the Brotherhood upon the basis of the plaintiffs being members of the craft represented by the Brotherhood and of the Brotherhood having breached its obligation under the statute to them as such craft members, even if it be assumed that such a breach as alleged, where existing craft status and membership are capable of being properly established, might afford a legal basis for a

2. Whether the plaintiffs constitute a part of the craft represented by the Brotherhood is not here a collateral, incidental or otherwise uncontrolling question in the lawsuit, but the existence of that fact as a matter of concept and status under the Railway Labor Act is of the very essence of the present action. It also may be observed that the question here

is not one of whether such an assimilation of another craft has been attempted and produced as possibly to give rise to craft status and duty of representation by operation of law, such as we regarded as having occurred in Howard v. St. Louis-San Francisco Ry. Co., 8 Cir., 191 F.2d 442, from the nature, manner and effect of the things there done.

recovery of damages against a collective bargaining representative under the Act.

We do not reach and have not considered any other question than the single one discussed.

Affirmed.

RIDDICK, Circuit Judge, participated in the hearing and proposed disposition of this case, but his death prevented his formal concurrence in this opinion.