THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE D. EMERSON, Respondent, v. THE BOARD OF ALDERMEN OF THE CITY OF BUFFALO, Appellant.

*Mandamus — it will lie against the successors of a canvassing board — a special provision relative to inspectors of election in Buffalo — Laws of 1890, chap. 262; 1870, chap. 519; 1891, chap. 105, secs. 366, 375, 508, and chap. 7; 1892, chap. 680.*

The revised charter of Buffalo, which went into effect in March, 1891, provided for five inspectors of election in each election district, three to be elected by the electors of the district and two to be appointed by "the board of aldermen immediately upon canvassing the votes cast at the annual election;" also that no ballot should be counted which contained more than three names for the office of inspector, and, further, that all the provisions of the charter relating to such office should take effect immediately.

At the annual election, in November, 1891, most of the ballots cast in one of the election districts of the city contained the names of three persons for inspectors of election; the remainder contained but two names.

The votes were returned to a canvassing board, which was composed of aldermen, and was called the common council, which decided to canvass only the votes which were cast for only two candidates.

George D. Emerson, who was the third man named on the majority ticket, applied to the court subsequently for a *mandamus* to compel the board of aldermen, which went into office on January 1, 1892, to complete the canvass and certify his election.

*Held,* that the duty of canvassing the returns, which, in 1891, rested with the common council, could be enforced by *mandamus* against their successors, the board of aldermen.

That the provisions of the charter of Buffalo, passed in 1891, governed the number of inspectors required at the annual election in 1891, and also at the time of the application for the writ of *mandamus* in July, 1892; that city, in this respect, not being subject to the laws which controlled the other parts of the State.

Conflicting provisions of the general laws relating to the whole State and the laws relating to the city of Buffalo, considered.

Appeal by the defendant, the Board of Aldermen of the City of Buffalo, from an order of the Supreme Court, entered in the office of the clerk of the county of Erie on the 22d day of July, 1892, granting a peremptory writ of *mandamus*, directed to the above-named board of aldermen, requiring said board of aldermen to complete the canvass of the returns and votes for inspectors of election for the sixth district of the Twenty-first ward of the city of Buffalo, cast at the annual election in 1891, and to determine and

certify one of the three nominees for said office who received the largest number of votes as duly elected to the offices of inspectors of election for the sixth district of the Twenty-first ward, and who have not yet been declared elected; and to appoint two persons additional inspectors of election for said districts who received the next highest number of votes to the three elected, and requiring said board of aldermen to assemble on the 25th day of July, 1892, at 2.30 o'clock P. M., for the purpose aforesaid.

*W. F. Mackey*, for the appellant.

*F. C. Laughlin* and *A. Moot*, for the respondent.

Dwight, P. J.:

The questions presented to the Special Term by the application for the writ of *mandamus* in this case were (1) whether the provisions of the revised charter of the city of Buffalo (chap. 105 of the Laws of 1891), relating to the inspectors of election in that city, had the force of law; and (2) whether they were capable of enforcement by the means adopted in this proceeding. We think both these questions were correctly answered in the affirmative, and that the order was properly made from which this appeal was taken. The facts involved were not in dispute; the questions presented related mainly to the effect to be given to several statutory enactments.

Section 366 of the statute above cited provided for five inspectors of election in each district, three to be elected by the electors of the district and two to be appointed by "the board of aldermen immediately upon canvassing the votes;" and a further provision of the same section was to the effect that no ballot should be counted as a vote for inspectors which bore more than three names for that office. This act became a law March 27, 1891, and by its last section (§ 508) all of its provisions relating to elections to office were to take effect immediately. Accordingly, at the annual election in November, 1891, the ballots cast by a majority of nearly three to one of the electors of District No. 6 of Ward Twenty-first contained the names of three persons for the office of inspectors of election, while those cast by the next highest number of voters contained only two names for that office. These votes were returned by the inspectors of the district to the canvassing board of the city, which

at that time, under the existing charter, was known as the common council, though composed wholly of persons elected as aldermen of the several wards. That board refused to canvass the votes returned for more than two candidates for inspectors of election on each ticket, and accordingly certified the election of those two candidates only who received the highest number of votes. The relator, George D. Emerson, was the third candidate on the majority ticket, having himself received 149 votes to sixty votes for the highest candidate on the other ticket.

On the 1st day of January, 1892, all the remaining provisions of the revised charter took effect, and the " common council " above mentioned was succeeded as a canvassing board by the " board of aldermen," consisting in part of the aldermen who had composed the former board and in part of aldermen elected to fill vacancies or to represent wards newly created. It was to the new board of aldermen that the relator presented his petition praying that such board complete the canvass of returns which its predecessor had refused to complete, and certify his election as one of the inspectors of the district; also that it appoint the two additional inspectors as required by the statute. The board of aldermen, by a tie vote, refused to grant the prayer of the petition, and on his application to the court at Special Term the order was obtained from which this appeal was taken.

In the absence of other facts, those embraced in the foregoing statement would, no doubt, entitle the relator to the relief demanded. *Mandamus* will lie to compel the performance of an official duty clearly prescribed by law on the part of a public officer or board. The case of the *People ex rel. Smith* v. *Schiellein et al.* (95 N. Y., 125), is abundant authority for the application of this rule to the case of a board of canvassers, and the case of the *People* v. *The Board of Supervisors of Chenango County* (8 N. Y., 330), for the proposition that while the duty continues it may be enforced against the successors in office of those who have originally neglected its performance. In the former of those cases it was said by the court: " It would be a reproach to the laws to hold that an election to office by the people could be defeated by the neglect or refusal of the canvassers to perform the official duty of canvassing votes cast at an election." And further: " It is one of the peculiar functions of

the writ of *mandamus* to meet and remedy the evils which would result from such a neglect of official duty." In this case the board of aldermen created by the revised charter of 1891 is made, in all respects, the successor, as a board of canvassers, of the common council — a board composed of aldermen — existing under the former charter, and the mere change in the name of the collective body can have no effect to relieve the one from the duty enjoined upon the other. By the revised charter the duty of canvassing the returns of votes cast for three inspectors of election in each of the districts into which the twenty-five wards, created thereby, were to be divided and the appointment of the two additional inspectors in each was laid upon the board of aldermen, *eo nomine*. That this was a duty first to be performed in respect to the election of 1891 admits of no doubt under the provision before mentioned, that all such parts of the statute, as related to elections to office, should take effect immediately ; and, since the new board of aldermen were not constituted until the 1st day of January, 1892, it must have been the intention of the statute that that duty should be performed in 1891 by the board of canvassers as it then existed, composed of aldermen, but officially denominated the common council.

Attention is called in the argument of counsel for the appellant to a provision of section 508 (*supra*), to the effect that the division of the city into twenty-five wards, instead of thirteen as formerly, should not take effect until the 1st day of January, 1892, except so far as was necessary to render the election of ward officers in 1891 regular and legal. But this must, clearly, be taken subject to the previous general exception of all provisions of the act relating to elections to office, and so it was evidently construed. Section 32 of the act provides that "the common council shall, on or before the first day of September in each year, divide the wards into convenient election districts of not more than 300 electors, and on or before the first Monday of October of each year designate the place of holding the polls in each district and fill vacancies in the office of inspectors of election." The case shows that this was done in the year 1891, and that the election for all offices in November of that year was held accordingly in the several election districts into which the twenty-five wards had been thus divided. The meaning of the limitation referred to was evidently to preserve the existing ward

lines for all the purposes of administration, until the revised charter should take effect as a whole.

So much of our inquiry has been directed merely to the question secondly above propounded, viz., whether, if the provision for five inspectors of election in each of the election districts of the city was in force at the time of the election and canvass of votes in 1891, and also at the time of the application for the writ of *mandamus* in July, 1892, it was capable of enforcement by means of that writ.

It remains to consider the grounds upon which it is argued that that provision was not so in force.

The facts which seem to be relied upon as the basis of that contention are, briefly, as follows: For many years before the ballot reform act of 1890 (chap. 262 of the laws of that year), the general election laws of the State provided for three inspectors of election in each election district, whether of cities or towns, two to be elected by ballot of the electors, no one of whom should vote for more than two, and the third to be appointed by the presiding officers of each election from the two next highest candidates.

By an act for the revision of the charter of Buffalo, passed in 1870 (chap. 519 of the laws of that year), practically the same provision was enacted for that city.

The ballot reform act of 1890 (*supra*), provided for five inspectors in each district, three to be elected by ballot of the electors, no one of whom should vote for more than three, and two to be appointed by the presiding officers of the election, and to be selected from the three next highest candidates.

By chapter 7 of the Laws of 1891, passed February seventh of that year, a return was had by general law to the system of three inspectors as it existed previous to the act of 1890. This was followed in the same year by the special act for the city of Buffalo, the provisions of which have been heretofore quoted, and which became a law March 27, 1891.

By section 375 of that Act (chap. 105), it is provided that elections held thereunder "shall be governed by the general election laws of the State where they are not inconsistent with the provisions of this act."

Finally, by chapter 680 of the laws of the present year, the legislature has made general provision for the appointment of all inspectors

of election in cities by the common council of each city; but this particular provision is, by section 11 of the act, made subject to the saving clause, " unless otherwise provided by law," and the repealing section makes no mention of any provision of the special act for the city of Buffalo.

We find in this statement of the course and present *status* of legislation on the subject in question, nothing which militates against the legal force and validity of the provision of the revised charter of Buffalo, relating to the number and mode of designation of inspectors of election. It was enacted subsequently to the general law of 1891, and was, therefore, not affected by its provisions, and it was saved by the express terms of the act of 1892.

It is true that the discrepancy between the special statute for Buffalo and the successive general enactments applicable to the rest of the State, may well excite surprise and give rise to inquiry as to its cause; but such an inquiry would be merely curious and without practical result. If conjecture were to be indulged, it might easily be surmised that the provision in question in the charter of Buffalo, was framed to conform to the general act of 1890, which was in force when that charter was originally drafted, and that in the haste and inattention which sometimes accompany legislative action the fact was over-looked, when the special statute was enacted, that the general statute had only shortly before been amended in the particular in question; and that, from a similar cause, the existence of the special provision for the city of Buffalo was over-looked when the saving clause above mentioned was inserted in the general act of 1892. But such conjecture furnishes no ground for judicial action; the legislature must be presumed to have understood and intended the plain and necessary effect of the language employed in its several enactments; and the power to remedy hasty or ill-considered legislation, by repeal or amendment, rests with the legislature, and not with the courts.

Counsel for the appellant urge upon our attention an apparent incompatibility between the provision in question in the charter of Buffalo, and the provision of the act of 1892 in respect to the appointment of the poll and ballot clerks, who constitute an important part of the machinery of elections under the latter statute. The

provision referred to is found in section 12 of the last-mentioned statute, which, after prescribing the number and qualifications of clerks to be appointed, provides that "at the first meeting of the inspectors of election in every district in which the law provides for the election of inspectors, the inspectors elected shall appoint one of the poll clerks and one of the ballot clerks, and the inspector appointed shall appoint the other poll clerk and ballot clerk." Whereas the provision of the charter of Buffalo is for the election of three and the appointment of *two* inspectors; so that, as it is said, the language of the general law, "and the *inspector* appointed shall appoint," etc., is inappropriate to the case of the city of Buffalo.

It is clear that, as a mere argument *ab inconvenienti*, this suggestion, even if the incompatibility were absolute, would not be conclusive upon any question arising on this appeal; but we do not think the case in this respect presents any practical difficulty. Undoubtedly, in order to give effect to this provision of the general law in its application to the exceptional case of the city of Buffalo, the word "inspector," as used therein, may be read "inspectors." The actual use of the word in the singular, without adding the words "or inspectors," only indicates the probability that the existence of the special provision for inspectors in the charter of Buffalo was over-looked in the framing and enactment of the provision for clerks in the act of 1892; but no such mere omission of the plural form of the word employed can have the effect of defeating the evident intention of the legislature to provide for the appointment of poll and ballot clerks in all the election districts of the State.

Upon the whole, we find nothing in legislation, subsequent to the enactment of the revised charter of the city of Buffalo, which has the effect to repeal, annul or impair the legal force and validity of the special provisions of that statute in respect to the number and mode of selection of inspectors of election in each of the election districts of that city; and that provision being in force, the relator was duly elected to the office in question, and was entitled to a canvass of his vote and a certificate of his election.

The order for a peremptory *mandamus* should be affirmed.

MACOMBER and LEWIS, JJ., concurred.

Order appealed from affirmed, with costs.