88 N.J. Super. 468 (1965)
212 A.2d 690
GEORGE S. PFAUS, DIRECTOR OF THE DIVISION ON CIVIL RIGHTS, AND DIVISION ON CIVIL RIGHTS, DEPARTMENT OF LAW AND PUBLIC SAFETY, STATE OF NEW JERSEY, PLAINTIFFS,
v.
LEON FEDER AND SARAH FEDER, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 1, 1965.
*469 Mr. Arthur J. Sills, Attorney General, for plaintiffs (by Mr. Howard H. Kestin).
Mr. Arthur E. Dienst for defendants.
HERBERT, J.S.C.
The plaintiff is applying for an interlocutory injunction. The defendants resist that application and also move to dismiss the complaint. The defendant Sarah Feder is the owner of a four-family house located at 14 Nelson Place, Maplewood. She lives in one of the apartments and has had tenants in the other three. Leon Feder is her husband and was joined because of the mistaken impression he owned an interest in the house. He is not a co-owner with his wife, and having been confined to the veterans' hospital at Lyons, New Jersey as a patient since October 1963 does not reside at 14 Nelson Place. He has even released all rights of curtesy in the premises.
*470 It having been established that Leon Feder is not an owner and that he did not participate in the events which were the immediate cause of suit, his motion for a dismissal will be granted.
The plaintiff holds office under N.J.S.A. 18:25-8, subsec. d. Under subsection h of section 8 he is empowered to "[c]onduct investigations, receive complaints and conduct hearings * * *," all for the purpose of enforcing the laws against discrimination. The statute provides in some detail for the administrative process which may result in an order to a respondent to cease and desist from unlawful discrimination or may result in a finding that there have been no unlawful discriminations. N.J.S.A. 18:25-19 provides "Observance of an order of the director issued pursuant to the provisions of this act may be enforced by a civil action brought by the director in the Superior Court to obtain such relief as may be necessary to effectuate the terms of said order." Except for this section the statute is silent about the director's power, or lack of it, to sue in any court.
The present case is not brought to effectuate the terms of any official order of the plaintiff. He has not yet concluded the administrative process regarding the discrimination complaint which is pending against Sarah Feder, and apparently will not reach for some time the point at which he can decide whether she did or did not violate the statute. The objective of the plaintiff in this suit is to keep available for Mr. and Mrs. Jerry Wood, until the administrative proceedings have been brought to a conclusion, an apartment in Mrs. Feder's building. Mr. and Mrs. Wood are not parties here, but they filed with the Attorney General under the statute (N.J.S.A. 18:25-13) the complaint charging Leon and Sarah Feder with unlawful discrimination.
Mrs. Feder takes the position that she refused to rent an apartment to Mr. and Mrs. Wood for valid business reasons and not because Mr. Wood is a negro. She has filed affidavits and exhibits in support of this position. In the Newark Sunday News of May 2, 1965 she advertised 14 Nelson Place for *471 sale at a price of $44,000. In the same issue of the newspaper she advertised two four-room apartments in the building for rent. She says that she had received termination notices from two of her three tenants and had decided that she would either sell the property or rent the apartments, whichever course might seem best to her.
Mr. and Mrs. Wood responded to the rental advertisement and were shown an apartment by Adolph Lippe, a friend of Mrs. Feder. After making their inspection, they were taken by Mr. Lippe to Mrs. Feder. She says she told them she was going to sell the premises and that a new owner would want to remodel and perhaps evict all tenants. She says she realized that Mr. and Mrs. Wood did not want a temporary tenancy subject to an imminent sale; that she told them no apartment was available for occupancy until June 1, 1965; that she would be selling and thought it best that she should not rent pending the sale.
As to her attempts to sell the property, Mrs. Feder says that she had good response to her advertising from prospective buyers. About May 9 she heard from Robert M. Cook, a salesman employed by John M. Litaway, a real estate broker. This inquiry from Mr. Cook led to his showing the property to Mr. and Mrs. David J. Stevens of Newark with the result that they signed a contract dated May 27, 1965 to purchase the property from Mrs. Feder at a price of $36,500, with a down payment of $1,000. A photocopy of the contract is an exhibit attached to defendant's affidavits. There is a provision for the payment of a commission to John M. Litaway, the broker, and there are provisions making the closing of title conditional upon procurement of a mortgage and upon dismissal of this suit.
Affidavits presented by the plaintiff challenge Mrs. Feder's claim that she decided to sell and not to rent. She says that decision was announced to Mr. and Mrs. Wood. Apparently she saw them on May 2, 1965. On May 6, 1965 a field representative of The Division on Civil Rights visited 14 Nelson Place. Her affidavit says that both apartments were shown *472 to her by "Mr. Feder," who told her they were for rent. [In fact the man was Mr. Lippe, Mr. Feder being confined to the hospital at Lyons.] She then identified herself and asked why the Woods had not been accepted as tenants. In reply the man she thought was Mr. Feder said, among other things, he was not the owner and the new owners wanted to keep both apartments.
Then David and Maxine Koelling went to 14 Nelson Place about May 14, were shown one of the apartments by Mrs. Feder and were told that both were for rent. Their affidavit describing their visit includes statements of Mrs. Feder indicating objections to Mr. Wood because of his race. Concerning rental inquiries following the visit of Mr. and Mrs. Wood Mrs. Feder says only: "Several days later a woman called me giving an Italian name and asking if she could see the apartments. Again my friend Adolph Lippe showed her the apartments. She did not offer to make a deposit. If she had I would have advised her of the impending sale." This falls short of a comprehensive statement that the apartments, subsequent to Mrs. Feder's refusal to accept Mr. and Mrs. Wood, were not shown to any other prospective tenants.
There are a few precedents for the type of interlocutory relief which the plaintiff is seeking. In Board of Gov. of Fed. Reserve System v. Transamerica Corp., 184 F.2d 311 (9 Cir. 1950), the plaintiff was in the process of dealing with a complaint filed under section 7 of the Clayton Act. Questions were involved about ownership of the stock of certain banks. At a stage where the board had made no order and was not yet able to make one the Bank of America entered into agreements for acquisition of the assets of the banks which had issued the stocks. If such transactions had been completed, the board's administrative proceeding would have become a mere formality. To forestall that result the board filed a petition with the Court of Appeals praying that the proposed transfers of assets be enjoined until the board's own proceedings could be concluded. The application was made directly to the Court of Appeals because it had by statute exclusive jurisdiction to *473 enforce the orders of the Board of Governors of the Federal Reserve System. The injunction was granted. After citing authorities upholding the power of an appellate court to preserve the subject matter of litigation pending an appeal, the court said (184 F.2d, at p. 315):
"The cases just cited deal with writs issued in aid of our appellate jurisdiction. We think a like jurisdiction is granted, under Section 1651 [28 U.S.C.A. § 1651], in aid of our original jurisdiction to enforce the orders of this Board, and that it may be exercised at any stage at which it may appear reasonably necessary to preserve that jurisdiction."
A somewhat similar result was reached in Dwellingham v. Thompson, 91 F. Supp. 787 (D.C. Mo. 1950), where the court granted a restraining order against terminating the employment of a group of railway workers pending determination of certain questions by the National Railroad Adjustment Board. Public Utilities Commission of District of Columbia v. Capital Transit Co., 94 U.S. App. D.C. 140, 214 F.2d 242 (1954), is another case in which an administrative agency was granted an injunction to preserve the subject matter of its own proceedings until those proceedings could be completed. The commission ordered on Feb. 26, 1954 an investigation of financial affairs of the transit company including proposed payments of large sums to bondholders and stockholders. On the following day the commission applied to the district court for an injunction against the making of the payments, such injunction to remain in force until the investigation could be completed. The district court denied the relief thus sought. On the appeal which the commission then took it was determined that an injunction should have been granted against the payment of a proposed dividend, but not against carrying out the bond redemption program. The Court of Appeals cited no authorities supporting the power to grant the type of relief sought by the commission, nor was there any discussion of that problem; the opinion dealt only with the propriety of injunctive relief on the facts of the particular case.
*474 In 73 C.J.S. Public Administrative Bodies and Procedures § 45, p. 362, it is said:
"Pending a proceeding before an administrative agency, the courts may grant injunctive relief to assist the agency in preserving the status quo until the administrative question before the agency has been determined by it; * * *"
However, the only cases cited for this are Board of Gov. of Fed. Reserve System and Dwellingham, supra. A similar statement can be found in 2 Am. Jur.2d, Administrative Law, § 593, p. 424:
"It is also recognized that judicial review may be available as to an interlocutory order affecting the merits of a controversy, and that a court may grant relief to preserve the status quo pending further action by the administrative agency."
The single case cited for the second half of this statement is Smith v. Highway Board, 117 Vt. 343, 91 A.2d 805 (Sup. Ct. 1952). There a highway patrolman sued for a permanent injunction against proceedings to terminate his employment. He also asked for an interlocutory injunction until the court could decide his case. Relief was granted at the trial level but on appeal the temporary injunction was vacated. After pointing out that Smith was attempting to invoke the primary jurisdiction of a court of equity to determine the whole controversy and thus take it away from the state's civil service system the court said (at 91 A.2d 812):
"The plaintiff could have taken his appeal and then, pending that proceeding before the board, he could have asked the board to preserve the standing of the plaintiff in status quo, if he deemed that advisable, or he could have applied to the court of chancery for injunctive relief to assist the board in preserving the status quo until the questions before it had been determined. 73 C.J.S., Public Administrative Bodies and Procedure, § 45, page 362, note 57; 43 C.J.S., Injunctions, § 13."
A group of employees brought suit in Domanick v. Triboro Coach Corporation, 259 App. Div. 657, 20 N.Y.S.2d 306 *475 (App. Div. 1940), for an injunction to prevent termination of their employment until the New York State Labor Relations Board could conclude a proceeding before it brought by a labor union. The case was dismissed, but the court commented thusly about an action in equity ancillary to an administrative inquiry (at 20 N.Y.S.2d 309):
"Such an action can be maintained to protect, not to defeat, the jurisdiction of the body which has the matter under consideration. Accordingly, it is the general rule that in order to maintain an ancillary action pending the determination of a primary proceeding there must exist a res which may be endangered by the acts sought to be enjoined."
Although authorities for the ancillary injunctive relief which the plaintiff seeks are few in number and not of great strength, I conclude that the complaint against Mrs. Feder should not be dismissed for failure to state a claim upon which relief can be granted. As a particular element of support for this, the parallel between the statutory power of the Superior Court to enforce orders of the director of The Division On Civil Rights under N.J.S.A. 18:25-19 and that of the Federal courts of appeal to enforce orders of the Federal Reserve Board may be noted. And in Board of Governors of Fed. Reserve System v. Transamerica Corp., supra, the 9th Circuit reasoned persuasively that its power by statute to enforce an order of the board should be protected  even though no such order had yet been made and might not be made  by an injunction preserving the subject matter of an administrative proceeding from which an enforceable order might result.
Defendants' counsel also argues that the plaintiffs' right to equitable relief is not clear enough to justify an interlocutory injunction, citing General Electric Co. v. Gem Vacuum Stores, 36 N.J. Super. 234 (App. Div. 1955), among other cases. It was there pointed out, however, that a preliminary injunction to preserve the subject matter of litigation is an exception to the general rule and need not be based *476 upon rights which are clear as a matter of law. Christiansen v. Local 680 of Milk Drivers & Dairy Employes of New Jersey, 127 N.J. Eq. 215 (E. & A. 1940), so holds.
Deciding there is power to enjoin in aid of the plaintiff's administrative proceeding does not lead to the conclusion that the power should be used by granting an interlocutory injunction. Such an injunction has been referred to as a drastic remedy and one requiring the exercise of an exacting judicial discretion. General Electric Co. v. Gem Vacuum Stores, supra. The desired objective is to maintain the status quo. If it could be maintained without loss to Mrs. Feder, or serious threat of loss, I would be inclined to grant an injunction requiring that the apartment which Mr. and Mrs. Wood sought to rent should either remain vacant until completion of the administrative proceeding or during that period should be leased only on terms obligating the tenant to vacate on short notice after any decision which might be rendered against Mrs. Feder. The possibility of financial loss to Mrs. Feder as a result of such an interlocutory injunction is so real, however, that the injunction should not be granted.
If the apartment remains vacant, Mrs. Feder will lose about one third of her income from the building. To put Mr. and Mrs. Wood in at once as monthly tenants, which the plaintiff suggests, would avoid loss of rents, but would not maintain the status quo; in fact would be a way of destroying or impairing the subject matter of the administrative proceeding. To order that the apartment be offered for rent only on a short-term basis until the final conclusion of the discrimination case might well have the effect of repelling prospective tenants who would not want to face the inconvenience, expense and uncertainty of moving out on brief notice. And the plaintiff, being a public official, can not as a practical matter, be called upon to protect Mrs. Feder by furnishing a bond against loss as a private litigant might be ordered to do. Nor is there assurance that Mr. and Mrs. Wood will want to move into the apartment if the administrative proceeding is finally decided against Mrs. Feder. When they offered to rent this *477 one-bedroom apartment they had one child and were expecting a second. Can it be assumed with any certainty that they, by the time the director decides the issues before him, will wish to move into an apartment which is hardly ideal for a family of four or that they can immediately terminate their then-existing tenancy? The question answers itself.
Mrs. Feder's plan to sell the building has been mentioned. An injunction against sale would be needed to preserve fully the status quo. That restraint is not entitled to serious consideration. Mr. and Mrs. Wood did not offer to purchase. The only res involved in the administrative proceeding is a tenancy of a particular apartment. Whether Mrs. Feder did or did not discriminate against the Woods with respect to that res, she was advertising the building for sale when she first met them and she should continue to be as free to effect a bona fide sale as though no dispute had ever arisen over renting. A comparison can be made between such a sale by her and the redemption of transit company bonds which the court refused to enjoin in Public Utilities Commission v. Capital Transit Co., supra.
The motion to dismiss is granted as to Mr. Feder and denied as to Mrs. Feder. The application of the plaintiff for an interlocutory injunction is denied.