97 N.J. Super. 4 (1967)
234 A.2d 98
GEORGE S. PFAUS, THE DIRECTOR OF THE DIVISION ON CIVIL RIGHTS OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
FRANK P. PALERMO AND PASQUALINE PALERMO, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Decided September 22, 1967.
*5 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Stephen Skillman, Deputy Attorney General, argued the cause for appellant (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
Mr. Ralph G. Mesce argued the cause for respondents.
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiff appeals, by leave of court, from an order of the Chancery Division vacating restraints previously imposed against the renting by defendants of an apartment to anyone other than one Arthur Matthews. The latter is a complainant before the Division on Civil Rights asserting unlawful discrimination by defendants against him because of his race (Negro) in refusing to rent an apartment to him. N.J.S.A. 18:25-12 (g), 13. At the time of the order under appeal, the complaint had not yet been heard in the Division, but a statutory finding of probable cause had been made by the Director (plaintiff herein). N.J.S.A. 18:25-14. Pending this appeal, a hearing officer in the Division heard the matter on August 25, 1967. He has not yet made his report and recommendations to the Director. After he does so, if the report is adverse to defendants they will have an opportunity to file exceptions with the Director before his final action in the matter.
The trial court in denying interlocutory relief relied on the decision in Pfaus v. Feder, 88 N.J. Super. 468 (Ch. Div. *6 1965), wherein it was held that although the court had jurisdiction to issue a restraint against a landlord in similar circumstances to preserve the status quo of the subject matter before the Division, a consideration of the financial loss to the landlord consequent upon such a restraint impelled the discretionary denial of the relief sought.
Affidavits in the Division show the following. Defendants own a three-family dwelling in Newark, one unit of which they occupy. On July 24, 1967 they advertised an apartment for rent. Matthews phoned defendants July 27, 1967 and made an appointment to view the apartment at 4 P.M. that day. When he arrived with his wife he was informed by defendant Mrs. Palermo that the apartment was rented and a deposit had been taken on it, whereupon he departed and informed Bruce Feldman, an employee of the State Department of Community Affairs, of the occurrence. Feldman, a Caucasian, went to the same premises at 4:50 P.M. the same day, and inquired about the apartment for occupancy by himself and his family, saying his name was Michaels. Mrs. Palermo thereupon showed him the second floor apartment, said it would be available August 10, 1967, that it rented for $135 monthly, and that a month's security would be required. He told her he would let her know after consulting with his wife.
In an affidavit filed in the trial court Mrs. Palermo states that she accepted a $20 deposit on the apartment (from one Mrs. Tamburri) on July 24, 1967 and $25 additional July 26, 1967. The balance was to be paid before moving into the apartment. Matthews inquired about the apartment on July 27, 1967, and she told him she had accepted a deposit on it, whereupon "without further conversation" he left. Later that day she showed the apartment to "Michaels" [Feldman] at his request. She informed him the then tenant would vacate August 10, 1967. The affidavit does not state that Mrs. Palermo told Feldman, as she had Matthews, that she had already accepted a deposit on the apartment.
*7 The Deputy Attorney General represented to us at the oral argument that Feldman's participation in this matter was in the course of the execution of a joint program of the State Department of Community Affairs and the Division on Civil Rights in finding new housing for people previously residing in the Central Ward of Newark who were being dispossessed as a result of slum clearance and other redevelopment programs in the area. Matthews was one of those being thus assisted.
Affidavits on file on this appeal indicate that Mrs. Tamburri is now in possession of the apartment and residing there as a month-to-month tenant at a rental of $125 monthly. She deposed in the Chancery Division on August 14, 1967 that she had given $20 and $25 deposits on the premises to Mrs. Palermo on July 24 and July 26, 1967, respectively. She did not know defendants prior to July 24, 1967.
Pending the application of plaintiff for leave to appeal, a judge of this court temporarily stayed the order sought to be reviewed to the extent of restraining defendants from renting or leasing the apartment in question to anyone other than the aforementioned Mrs. Tamburri. That restraint was thereafter continued by the court until the determination of this appeal. Plaintiff now seeks its continuance until the Division acts on the complaint, pointing out that if its determination is in favor of the complainant and an order is entered requiring the apartment to be made available to Matthews on the same terms as would be offered any other renter, a prior lease of the premises for a term to an innocent third person would render Matthews' victory Pyrrhic and frustrate the strong public policy underlying the statute prohibiting discrimination in relation to the rental of real estate.
Defendants argue, however, that the matter has been mooted by the tenancy of Mrs. Tamburri. We think not. She is a monthly tenant whose tenancy can be terminated by landlord's 30-day notice. It would be premature for us to decide, in advance of a ruling by the Director, that he has *8 no power to order the defendants to give such a notice should he deem it necessary to implement any finding of discrimination by defendants in the renting of the property. Moreover, there may possibly be a question for the Division as to whether defendants can assert the Tamburri tenancy at all in view of the apparently inchoate nature of the agreement to rent to her at the time of the alleged discriminatory refusal of Matthews.
As pointed out by the court in the Feder case, supra (88 N.J. Super., at pp. 472-475), there was, even at the time of that decision, ample precedent for judicial intervention to aid in the preservation of the subject matter of a proceeding pending before an administrative agency. See also F.T.C. v. Rhodes Pharmacal Co., 191 F.2d 744 (7 Cir. 1951); Douds v. International Longshoremen's Ass'n., 242 F.2d 808 (2 Cir. 1957). Since the Feder decision the Legislature has reinforced such jurisdiction by its adoption of L. 1966, c. 17, § 6, approved April 7, 1966 (N.J.S.A. 18:25-14.1), which gives the Attorney General the power to "proceed against any person in a summary manner * * * to prevent violations or attempts to violate [the provisions of the Law Against Discrimination], or attempts to interfere with or impede the enforcement of any such provisions or the exercise or performance of any power or duty thereunder." The enactment of this statute may have emanated from efforts by civil rights groups to obtain explicit legislation authorizing interim injunctive relief. See Blumrosen: "Antidiscrimination Laws in Action," 19 Rutgers L. Rev. 189, 227-229 (1965). The 1966 act thus reflects further legislative emphasis upon adequate enforcement of a statute ranking high indeed in our public policy. See David v. Vesta Co., 45 N.J. 301, 312-313 (1965); Jones v. Haridor Realty Corp., 37 N.J. 384, 392 (1962). Consequently, we cannot adopt a grudging or narrow approach to the plaintiff's plea for relief to prevent any adjudication he may make in this matter in vindication of Matthews' rights from becoming a vain and useless act.
*9 We need not here determine how we would deal with a case where granting injunctive relief would clearly entail substantial economic loss to defendants, as the court conceived the situation to be in Feder, supra. The facts here differ substantially from those there. There is no prospect here of probable economic loss to defendants by an order prohibiting their renting to others than Tamburri, or making a term lease to her pending the action of the Division on the Matthews complaint. The existing Tamburri tenancy is not proposed to be affected by any present restraint. Therefore we conclude that a restraint of the scope mentioned should be entered, as reasonably necessary to preserve the status quo. However, we believe defendants are equitably entitled to be protected, as a condition of such a restraint, against any ultimate refusal by Matthews to accept the apartment if ordered made available to him and any consequent loss of income to them.
We will therefore continue the restraint previously entered by this court pending appeal until the final decision of the Division on the Matthews complaint. And that restraint will be broadened to prohibit the making by defendants of a lease for a term to Mrs. Tamburri. However, these restraints will be conditioned upon Matthews' offering to defendants, by a stated early date to be fixed, after being afforded an opportunity forthwith to inspect the apartment and decide whether he wants it, to become a monthly tenant thereof whenever the apartment becomes available to him as a result of any order in this litigation, or earlier, and depositing $125 with the clerk of the court as security for payment of the first month's rent by the same stated date.
The order under appeal is modified in conformance with this opinion, without costs. Jurisdiction of the matter is returned to the Chancery Division.