228 N.J. Super. 370 (1987)
549 A.2d 900
PAMELA S. POFF, DIRECTOR OF THE DIVISION ON CIVIL RIGHTS, DEPARTMENT OF LAW AND PUBLIC SAFETY, STATE OF NEW JERSEY, PLAINTIFF,
v.
JULIO CARO, DEFENDANT.
Superior Court of New Jersey, Law Division Hudson County.
Decided March 12, 1987.
*373 Nancy Kaplan Miller, Deputy Attorney General for the Plaintiff.
Robert Schlanger, for the Defendant.
HUMPHREYS, A.J.S.C.
Three homosexual males have filed a complaint with the Division on Civil Rights contending that the property owner refused to rent a three bedroom apartment to them.[1] The Division on Civil Rights seeks a preliminary injunction restraining *374 the defendant from renting the apartment to anyone else while the discrimination complaint is unresolved.
The major and novel issue before this Court is whether a property owner violates the New Jersey Law Against Discrimination by refusing to rent to homosexuals because the owner fears that the homosexuals may later acquire the disease known as AIDS.
After consideration of the briefs and oral argument, the Court finds that: (1) Refusal to rent on such a ground constitutes discrimination by a landlord against members of the public who have a perceived handicap; (2) such conduct is a violation of the Law Against Discrimination. See N.J.S.A. 10:5-1 et seq.; and (3) the refusal to rent was probably based on that invalid ground. The preliminary injunction will therefore issue, but with certain safeguards to protect the rightful property interests of the owner.

I.
The Division has presented the following facts. The defendant advertised a three bedroom apartment for rent. Three men attempted to rent the apartment. Upon learning that the three men were homosexuals, the defendant refused to rent the apartment to them because he feared that they might later acquire AIDS and thereby endanger his family residing on the premises.
Upon a review of all the material submitted, the Court finds that the Division is likely to establish these facts at final hearing.[2]

II.
A preliminary injunction "summons the most sensitive exercise of judicial discretion." Crowe v. De Gioia, 90 N.J. 126, 132 *375 (1982). The legal principles underlying the exercise of that judicial discretion were set forth in Crowe v. De Gioia, and can be summarized as follows.
Preliminary injunctive relief should not issue except when necessary to prevent irreparable harm. Such relief should be withheld when the right underlying the claim is unsettled; nor should preliminary injunctive relief be granted when all material facts are controverted.
To prevail on such an application, the movant must make a preliminary showing of a reasonable probability of ultimate success on the merits. This requirement is tempered by the principle that mere doubt as to the validity of the claim is not an adequate basis for refusing to maintain the status quo. The Court must also weigh the relative hardship to the parties resulting from the grant or denial of preliminary injunctive relief. Crowe v. De Gioia, 90 N.J. at 132-134. The Court must always consider and apply principles of justice, equity and morality. Zoning Board of Adjustment v. Service Electrical Cable TV, 198 N.J. Super. 370, 379 (App.Div. 1985).
The Division on Civil Rights is expressly authorized by statute to seek preliminary injunctive relief of this kind. See N.J.S.A. 10:5-14.1; Pfaus v. Palermo, 97 N.J. Super. 4, 8 (App. Div. 1967); see also Pfaus v. Feder, 88 N.J. Super. 468 (Ch.Div. 1965). Whether such preliminary injunctive relief should be granted and under what conditions is a matter for a Court to determine upon consideration of traditional principles governing the issuance of preliminary injunctive relief. See Pfaus v. Feder, 88 N.J. Super. at 476.
However, a Court should bear in mind that the statute authorizing the Division to seek the application "reflects further legislative emphasis upon adequate enforcement of a statute (the Law Against Discrimination) ranking high indeed in our public policy." Pfaus v. Palermo, 97 N.J. Super. at 8 (matter in parentheses added). For that reason a Court cannot *376 "adopt a grudging or narrow approach" to an application for a preliminary injunction to vindicate the rights of a member of the public who seeks to rent. Otherwise, those rights would become "vain and useless." Id.

III.
The Law Against Discrimination protects the physically handicapped against discrimination based on that handicap. N.J.S.A. 10:5-4.1. The defendant questions whether a person suffering from AIDS is a handicapped person within the meaning of the Law Against Discrimination. An examination of the disease shows that such a person is clearly handicapped.
AIDS is a terrifying disease which has no known cure. It is transmitted primarily through the blood. Sexual intercourse, whether by homosexuals or heterosexuals, can result in an interchange of blood, and thereby infect another with the disease.
Public health experts believe that a person who engages in promiscuous sexual intercourse without condoms, whether that person is a homosexual or a heterosexual, incurs a substantial risk of becoming infected with AIDS.
AIDS attacks and eliminates the body's defense system against disease. Once those systems are eliminated, germs otherwise harmless can and do produce devastating and ultimately lethal diseases.
The AIDS disease is sweeping the country and indeed the world. Many public health experts view AIDS as an epidemic. Some compare it to the Black Plague. See the Harvard Medical School Health Letter, November 1985 at 1; see also Bd. of Education of Plainfield v. Cooperman, 105 N.J. 587 (1987).
Thus, unless medical science can find a cure, a sufferer from AIDS is faced with the grim prospect of a debilitating disease and early death. In such a setting, a person suffering from AIDS clearly has a severe handicap within the meaning of the Law Against Discrimination. Our New Jersey courts have *377 construed the law against discrimination "with that high degree of liberality which comports with the preeminent social significance of its purposes and objects." Passaic Daily News v. Blair, 63 N.J. 474, 484 (1973).
"`Since the inception of the Law Against Discrimination, our Courts have recognized its humanitarian concerns, its remedial nature and the liberal construction accorded it.'" Andersen v. Exxon, 89 N.J. 483, 495 (1982), quoting Panettieri v. C.V. Hill Refrigeration, 159 N.J. Super. 472, 482 (App.Div. 1978). Thus, the Supreme Court in Andersen interpreted the Law Against Discrimination as applying to any disability caused by injury or illness, not limited to such patent conditions as "the halt, the maimed or the blind." Id.
Our courts have similarly construed the Law Against Discrimination, N.J.S.A. 10:5-1 et seq., to include persons who have spots on their lungs. See Rogers v. Campbell Foundry Co., 185 N.J. Super. 109 (App.Div. 1982), certif. denied, 91 N.J. 529 (1982), or a mild heart condition. See Panettieri v. C.V. Hill Refrigeration, 159 N.J. Super. 472 (App.Div. 1978).
In light of the above principles, a person suffering from AIDS has a disability caused by injury or illness and, therefore, is protected by the Law Against Discrimination. See also School Board of Nassau County, Fla. v. Arline, 480 U.S. 273, 107 S.Ct. 1123, 1128, 94 L.Ed.2d 307 (1987).
The complainants here do not have AIDS and therefore do not have a "handicap." However, discrimination based on a perception of a handicap is within the protection of the Law Against Discrimination. See Rogers v. Campbell Foundry, 185 N.J. Super. at 112, and Andersen v. Exxon Co., 89 N.J. at 495, n. 2. Distinguishing between actual handicaps and perceived handicaps makes no sense. For example, in the case of racial and religious discrimination, the Law Against Discrimination cannot reasonably be read to prohibit a landlord from refusing to rent to a member of a racial or religious minority, but to allow a landlord to refuse to rent to a person who is only *378 perceived by the landlord to be such a member. Reasonably interpreted, the Law Against Discrimination protects persons who are discriminated against because they have AIDS and persons who are discriminated against because they are perceived to have AIDS or be potential victims of AIDS. "Prejudice in the sense of a judgment or opinion formed before the facts are known is the fountainhead of discrimination engulfing medical disabilities which prove on examination to be ... nonexistent." See Andersen v. Exxon, 89 N.J. at 495, n. 2.
The facts presented here by the Division show a strong prima facie case of discrimination, to wit, that the landlord refused to rent because he believed that the three males would likely get AIDS because they were homosexuals. At the present time AIDS is more prevalent in the homosexual community. That may be changing. In any event the fact that a homosexual is more likely to get AIDS does not afford a valid basis for a belief that these three homosexual men will become infected with AIDS. That would be akin to a belief that if a race or an ethnic group is more likely to contract a particular contagious disease, a member of that race or ethnic group will contract that disease.
The Division's position is further fortified by its persuasive argument that the landlord's conduct would constitute a violation of the laws prohibiting discrimination by reason of sex or marital status. See N.J.S.A. 10:5-4.
The conduct of the landlord here, if ultimately proven, is proscribed by the provisions of the law prohibiting discrimination against persons with perceived handicaps.
Defendant contends that the Division has not established irreparable harm since the three men may be able to find other apartments in the area. The Court takes judicial notice that an extremely acute shortage of housing exists in Hudson County. Thus, if a preliminary injunction is not entered, the three men's "rights" to the apartment under the Law Against *379 Discrimination may become "vain and useless." Pfaus v. Palermo, 97 N.J. Super. at 8. Irreparable harm has therefore been shown.
The landlord contends that he is exempt from the law against discrimination since he is renting an apartment in a two-family owner occupied house. See N.J.S.A. 10:5-5(n). Exemptions from remedial statutes should generally be narrowly construed. See Service Armament Co. v. Hyland, 70 N.J. 550, 559 (1976); Eyre v. Bloomfield Savings Bank, 177 N.J. Super. 125, 130 (Ch.Div. 1980); Male v. Pompton Lakes Mun. Util. Auth., 105 N.J. Super. 348, 355-356 (Ch.Div. 1969). The facts here indicate that the landlord had turned his premises into a three family not a two family house. He was therefore not exempt from the statute.
The Court is satisfied that the Division has presented a strong prima facie case factually and legally, and is likely to be able to prove unlawful discrimination.

IV.
The property owner may be harmed by the entry of a preliminary injunction since he will be unable to rent the apartment to others while the administrative proceeding is pending before the Division. To afford him some protection, the Court will condition the injunction upon the three men tendering within five days hereof a deposit of two months rent to the landlord, and binding themselves in writing to take the apartment under reasonable terms and conditions in the event that the decision in the Division on Civil Rights is in their favor.
As further protection for the landlord, the proceedings in the Division on Civil Rights will be expedited. If the proceedings are not completed within thirty days hereof, the property owner may move to dissolve or modify this preliminary injunction.

*380 V.
The Court has been advised that the landlord is willing to accept the three men as tenants under reasonable terms and conditions, provided that the within action is dismissed. Apparently, the three men are unwilling to accept this offer, insisting instead on substantial penalties and counsel fees. The landlord contends that is overreaching and should not be allowed.
Since the matter is before the Division, a Court should not rule at this juncture. The Court assumes that the Division, represented by the Attorney General, will attempt to conciliate the matter in a fair and equitable fashion to all parties; and if conciliation is not possible, then the hearing examiner will apply the law in a fair and equitable manner to both the prospective tenants and the landlord.
The Court observes, however, that the landlord's position on the penalties and attorney's fees seems to have considerable merit. This is a case of first impression. Hence, the landlord cannot be said to have violated a well-settled rule of law. Moreover, the landlord is now willing to accept the tenants.
Furthermore, the landlord's refusal to rent did not appear to be motivated by spite or malice directed against any particular group, but rather out of fear that his family might be exposed to a terrifying disease. As Justice Brennan pointed out in School Board of Nassau County, Fla., 107 S.Ct. at 1129, "Few aspects of a handicap give rise to the same level of public fear and misapprehension as contagiousness."
The fact that those fears are ill-founded does not detract from their reality to the person who fears. Under the circumstances, the court suggests that the Division should consider foregoing the imposition of any harsh penalties or counsel fees on the landlord.

CONCLUSION
The Law Against Discrimination has been a shining beacon of reason and hope to those who have suffered the painful sting of *381 prejudice. As stated in the statute, unlawful discrimination "threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and foundations of a free democratic State." N.J.S.A. 10:5-3. Such discrimination is "peculiarly repugnant in a society that prides itself on judging each individual by his or her merits." Andersen v. Exxon, 89 N.J. at 491; Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 80 (1978).
As the Statue of Liberty beams its message to the "poor, huddled masses yearning to breathe free," so does the Law Against Discrimination proclaim its message of freedom and equality of opportunity for all, unfettered by the mythology of prejudice and discrimination. To refuse to extend that protection to homosexuals because they may be more susceptible to a dread disease would mark a return to a past of judging individuals on the basis of ignorance and prejudice. A home is a basic human need. Homosexuals also need homes. They should not be denied that basic need by a democratic and caring society.
NOTES
[1] This is a refinement of an oral opinion.
[2] The Court's analysis of that factual material is omitted in the interest of brevity.