**John OLSON, Plaintiff,**

v.

**GENERAL ELECTRIC ASTROSPACE a/k/a Martin–Marrietta Astrospace, Defendant.**

Civ. No. 94–1190(CSF).

United States District Court, D. New Jersey.

June 9, 1997.

Klausner & Hunter by Stephen E. Klausner, James P. Madden, Somerville, NJ, for Plaintiff.

Epstein Becker & Green, P.C. by Robert H. Bernstein, John P. Quirke, Newark, NJ, for Defendant.

FISHER, District Judge.

The present case is an action alleging employment discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq.*, and the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5–1 *et seq.* This court had previously granted summary judgment in favor of the defendant on all counts. The matter is now before the court on remand from the Third Circuit with instructions to determine whether the plaintiff is handicapped within the meaning of the LAD. For the following reasons, summary judgment shall be denied as to plaintiff's LAD claim.

1. Olson's complaint named the defendant as "General Electric Astrospace a/k/a Martin–Marietta Astrospace." However, Martin–Marietta acquired General Electric Astrospace in 1993 and assumed responsibility for this litigation. Martin–Marietta has since merged with Lock-

### I. Background

Plaintiff, John Olson ("Olson" or "Plaintiff"), commenced his employment with General Electric ("GE")[1] on April 3, 1988 as a Senior Member, Technical Staff, in the Parts Engineering Department. He reported throughout most of this period to Dale Sansoni ("Sansoni"), the manager of Parts Engineering. In February of 1991, Olson was hospitalized for four months for depression. He returned to work without incident on May 31, 1991, although Sansoni gave him as much time off as he needed. On September 11, 1991, GE informed Olson that due to adverse business conditions, it was forced to lay him off, along with hundreds of other employees, as part of a general reduction in force.

Nearly a year later, Olson learned of an opening for the position of Quality Assurance Specialist at GE's East Windsor, New Jersey, facility. The successful candidate was to report to Sansoni. Upon learning of the opening, Olson had telephoned Sansoni, who encouraged him to apply for the position. Plaintiff did so on September 9, 1992. He was initially one of four candidates, but of the four, Sansoni interviewed only Olson. GE contends that because Sansoni was already familiar with plaintiff's work, they focused at the interview on Olson's experiences since leaving GE. Olson claims that during the interview, Sansoni asked him if he had any further medical developments, and that approximately one-third of the interview concerned his health and marital status. According to Olson, Sansoni discussed the medication Olson was taking, a one-month hospitalization that Olson had admitted himself to for testing, and an overnight hospitalization that Olson had undergone in order to diagnose a possible sleep disorder. Olson maintains that he told Sansoni that all of the tests had been negative, and that the doctors had informed him the most likely diagnosis was simply a sleep disorder. However, plaintiff's psychologist later diagnosed

heed Corporation and the new entity is known as Lockheed Martin Corporation. Thus, according to counsel for the defendant, Lockheed Martin Corporation is now responsible for any liability in this action.

him with Multiple Personality Disorder with depressive episodes, in addition to a sleep disorder. According to plaintiff, Sansoni told him that he would recommend that Olson be hired for the position and that he would not be interviewing the other applicants.

A few days after Sansoni interviewed Olson, a co-worker gave Sansoni the resume of Jeffrey Venditte. The co-worker had previously worked with Venditte at Hughes Aircraft Company and highly recommended him to Sansoni. One week after meeting with the plaintiff, Sansoni interviewed Venditte. Although Sansoni considered both Olson and Venditte qualified for the job. he recommended to his superior, Christina Eggert ("Eggert"), that GE hire Venditte. Sansoni believed that Venditte had better experience than Olson respecting two principal job requirements: parts overstressing and failure analysis. Sansoni also believed that Venditte's work at Hughes and ITT Corporation would be valuable to GE. Sansoni and Eggert discussed both candidates' qualifications, but did not discuss Olson's medical history. Eggert, who made the final hiring decision. agreed with Sansoni's recommendation and hired Venditte. On October 21, 1992, Sansoni telephoned the plaintiff to inform him that another candidate had been chosen for the job.

On November 4, 1992, plaintiff filed with the Equal Opportunity Employment Commission ("EEOC") a charge of discrimination against GE. The EEOC conducted an investigation and on December 13, 1993, issued a no-cause determination. Olson then filed a complaint with this court on March 11, 1994, alleging that GE rejected him for the position of Quality Assurance Specialist in violation of the ADA and LAD. GE moved for summary judgment before this court on May 18, 1995. By order dated June 20, 1995, this court granted summary judgment to GE on all counts. Plaintiff appealed. By order dated December 5, 1996, the Third Circuit affirmed this court's ruling that Olson had failed to prove that he was "disabled" within the meaning of the ADA, but reversed the grant of summary judgment on plaintiff's ADA claim that GE regarded him as disabled. *Olson v. General Elec. Astrospace,* 101 F.3d 947 (3d Cir.1996). The Third Circuit also reversed the grant of summary judgment on Olson's LAD claim. While this court had originally determined that Olson's LAD claim must fail for the same reasons the court dismissed his ADA claim, the Third Circuit stated that it might be possible for the plaintiff to be handicapped under the LAD without being disabled under the ADA. Accordingly, the Third Circuit remanded the issue to this court, with instructions to consider whether Olson demonstrated that he is handicapped as defined by the LAD.

## II. *Analysis*

The ADA defines the term "disability," in relevant part, as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). The Third Circuit affirmed this court's finding that Olson had failed to demonstrate that his impairments substantially limited his major life activities. Accordingly, Olson was not disabled within the meaning of the ADA, and summary judgment was granted in favor of GE on this count. The LAD employs the term "handicapped," and defines the term, in relevant part, as follows:

"Handicapped" means suffering from … any mental, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques.

N.J.S.A. 10:5–5(q).

■ Defendant in this case maintains that the definition of handicap under the LAD does not deviate from the definition of disability under the ADA. Defendant argues that the requirements for showing handicap under the LAD are analogous to the ADA's requirement that the purported condition interfere with a major life activity, and since Olson cannot meet his burden under the ADA, his LAD claim must also fail. However, courts have explicitly ruled that the LAD has no such major life activities handicap requirement. *Gimello v. Agency Rent–A–Car Systems,* 250 N.J.Super. 338, 358, 594

A.2d 264 (App.Div.1991); *Illingworth v. Nestle U.S.A., Inc.,* 926 F.Supp. 482, 488 (D.N.J. 1996) ("the LAD, unlike the Americans With Disabilities Act, has no such 'major life activities handicap' requirement") (citing Gimello). Accordingly, the court's analysis of Olson's ADA claim is not determinative of his LAD claim. The Third Circuit affirmed that, procedurally, claims brought under the ADA and the LAD are analyzed identically under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Olson,* 101 F.3d at 956. However, the analysis of a plaintiff's substantive claim differs under the ADA and LAD. *Gimello, supra; Illingworth, supra.*

New Jersey courts have repeatedly emphasized the broad remedial nature of the LAD, and have admonished that it should be construed liberally. In *Andersen v. Exxon Co.,* 89 N.J. 483, 446 A.2d 486 (1982), the New Jersey Supreme Court determined that the LAD was intended to cover more than just "severe" disabilities. The Court later clarified that the LAD is remedial social legislation deserving of a liberal construction, and that the statutory definition of "handicapped" is very broad in its scope. *Clowes v. Terminix International Inc.,* 109 N.J. 575, 590–95, 538 A.2d 794 (1988). In *Clowes,* the Court determined that alcoholism is a handicap within the meaning of the LAD. The court reasoned that

> as generally understood by the medical profession, alcoholism is a disease that manifests itself by both physical and psychological symptoms. Depending on the symptoms presented in any one case, an alcoholic might suffer from either a "physical disability [or] infirmity ... which is caused by illness," or from a "mental [or] psychological ... disability resulting from psychological, physiological or neurological conditions which ... is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques."

*Id.* at 594, 538 A.2d 794 (citing N.J.S.A. 10:5–5(q)). For the same reasons, substance abuse is likewise a handicap under the LAD. *Matter of Cahill,* 245 N.J.Super. 397, 585 A.2d 977 (App.Div.1991). In *Gimello,* the court determined that obesity was a handicap which entitled the obese person to LAD protection. The court reached this conclusion because the plaintiff's obesity "was a recognized medical condition for which he sought legitimate treatment but with modest success." *Gimello,* 250 N.J.Super. at 355, 594 A.2d 264.

New Jersey courts have not yet ruled on whether depression and other mental illnesses constitute handicaps as defined by the LAD. However, the reasoning articulated in *Clowes* and *Gimello* are equally applicable to the present case. Olson's doctor, Dr. Lewis Giles, reported:

> Mr. Olson's diagnosed condition is Multiple Personality Disorder (also known as Dissociative Identity Disorder), DSM–IIIR 300.14, with depressive episodes secondary to dissociative symptomatology, DSM–IIIR 311.00. Mr. Olson's dissociative condition appears to be nearly life-long in duration and has been evidenced in his adult life by several acute psychiatric hospitalizations. The persistence of this disability over Mr. Olson's life-span may be attributed to a failure of accurate diagnosis and to consequent ineffective treatment. At the present time, given adequate continuing therapy, the prognosis for Mr. Olson appears to be good.

This report reveals that Olson suffers from a condition which is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques, for Dr. Giles treated Olson throughout 124 psychotherapy sessions between July 24, 1992, and July 19, 1994, and clinical psychologists including Dr. Giles are licensed in New Jersey. Thus, in Olson's case, as in *Clowes,* the plaintiff suffers from an ailment that is generally understood by the medical profession as a disease. As in *Gimello,* plaintiff's ailment is a recognized medical condition for which he sought legitimate treatment but with modest success. Accordingly, while the New Jersey courts have not yet addressed the issues of depression and mental illness, the application of their rationales in the cases cited leads to the conclusion that these ailments constitute handicaps within the meaning of the LAD.

■ Defendant argues that not every diagnosed condition may be considered a handicap under the LAD, pointing to the New Jersey Attorney General's Formal Opinion No. 1–1989, which instructs that a "condition recognized as a disability, handicap or disease for purposes of clinical research or medical treatment is not automatically within the definition for purposes of legal standards." Defendant warns that if all disorders enumerated in the DSM were included in the LAD, the law would be read to protect those suffering from disorders ranging from pedophilia to necrophilia. The court is not alarmed by such a possibility. As Judge Petrella noted in *A.B.C. v. XYZ Corp.*, the LAD would not protect conduct which would otherwise constitute a crime. He explained that "[u]nder usual rules of statutory construction, when general and specific provisions of statutes conflict, the specific provisions govern." 282 N.J.Super. 494, 508, 660 A.2d 1199 (App.Div.1995) (Petrella, J., concurring) (citation omitted). The definition of "handicap" in the LAD is in general terms, but New Jersey law specifically prohibits a range of lewd acts. Thus, "the Legislature's specific prohibition of lewdness effectively precludes any argument that such conduct is protected under the LAD." *Id.*

■ Moreover, the inclusion of Olson's conditions in the LAD's definition of "handicap" is consistent with the growing body of case law addressing depression and other mental disorders. These ailments are considered disabilities under the ADA. *See, e.g., Pritchard v. Southern Co. Services,* 92 F.3d 1130, 1132 (11th Cir.1996), *amended on reh'g,* 102 F.3d 1118 (11th Cir.1996); *Shea v. Tisch,* 870 F.2d 786 (1st Cir.1989); *Doe v. Region 13 Mental Health—Mental Retardation Commission,* 704 F.2d 1402, 1408 (5th Cir.1983); *reh'g denied,* 709 F.2d 712 (5th Cir.1983). These psychological conditions have also been deemed to be handicaps as that term is defined in the Rehabilitation Act. *Overton v. Reilly,* 977 F.2d 1190 (7th Cir.1992). Accordingly, this court finds that Olson's mental disorders entitle him to protection against discrimination under the LAD.

■ Plaintiff argues further that he falls within the protection of the LAD because he was perceived as handicapped. On appeal, the Third Circuit specifically found that Olson made out a cause of action for violation of the ADA based on being perceived as disabled. The court determined that Sansoni's awareness of Olson's illnesses may have biased his evaluation of the plaintiff and caused him to recommend Venditte for the opening. This court finds that those facts similarly make out a cause of action under the LAD for discrimination based on perceived handicap. New Jersey state courts have held that the LAD includes individuals who are not disabled but are perceived as being handicapped. *Rogers v. Campbell Foundry Co.,* 185 N.J.Super. 109, 112, 447 A.2d 589 (App. Div.1982) ("those perceived as suffering from a particular handicap are as much within the protected class as those who are actually handicapped."); *Poff v. Caro,* 228 N.J.Super. 370, 377, 549 A.2d 900 (Law Div.1987) ("discrimination based on a perception of a handicap is within the protection of the Law Against Discrimination.") (citing *Rogers* and *Andersen v. Exxon Co.,* 89 N.J. at 495, n. 2, 446 A.2d 486).

■ Defendants assert that the issue of perceived handicap under the LAD was not remanded to this court by the Third Circuit. This court finds nothing in the Third Circuit's mandate which would exclude this issue. While the Third Circuit did not explicitly refer this court to the issue, it remanded Olson's entire LAD claim. Moreover, the Third Circuit found that Olson had clearly demonstrated a genuine issue of material fact regarding his claim of perceived disability under the ADA, and therefore reversed this court's grant of summary judgment on that issue. The same issue under plaintiff's LAD claim is therefore properly before this court. Defendant now asks this court to revisit the merits of this claim and argues that plaintiff is unable to show he was discriminated against because of Sansoni's perception that he was handicapped. However, because the Third Circuit has already rejected defendant's arguments and determined that a genuine issue of fact remains, summary judgment is precluded as to this claim.

## III. *Conclusion*

For the foregoing reasons, defendant's motion for summary judgment as to Olson's LAD claim shall be denied. An appropriate order has already been filed.